# Richmond.

## Seaboard Air Line Railway Company v. J. E. Bowden & Company.

### January 14, 1926.

1. Abatement, Revival and Survival—*Plea in Abatement for Want of Jurisdiction—Extrinsic Evidence to Support Plea.*—In order to determine whether or not the trial court was right in its ruling on a plea to the jurisdiction, the appellate court must look to the plea alone, for the plea must stand without the aid of extrinsic evidence to support it.

2. Actions—*Venue—Fixed by Statute.*—The venue of all actions in this State, whether local or transitory, is fixed by statute.

3. Abatement, Revival and Survival—*Plea to the Jurisdiction—Negativing Every Ground of Jurisdiction.*—To constitute a plea in abatement for lack of jurisdiction a sufficient plea, it must negative every ground of jurisdiction enumerated in the statute.

4. Abatement, Revival and Survival—*Plea to the Jurisdiction— Negativing Every Ground of Jurisdiction—Case at Bar.*—In an action against two carriers to recover damages to two carloads of strawberries shipped by the plaintiff, plaintiff in error, one of the defendants, filed a plea to the jurisdiction. Defendant in error, the plaintiff, objected that this plea did not negative every ground of jurisdiction enumerated in section 6049 of the Code of 1919, and his objection was sustained. While the plea met the requirements of the statute in most particulars, it was fatally defective in that it failed to deny that the codefendant of defendant in error, a foreign railroad company, had estate in the county or was doing business therein. The fact that this defendant was a foreign corporation and had estate in the county, gave the court jurisdiction over it under the provisions of section 6049 of the Code of 1919.

5. Jurisdiction—*Joint Tort Feasors—Jurisdiction Over One Joint Tort Feasor Confers Jurisdiction Over the Other—Case at Bar.*—In an action against two carriers for damages to two carloads of strawberries, transported by defendants, the trial court had jurisdiction over one of defendants, a foreign corporation, having estate in the county, therefore, it follows that it was not error for the court to assume jurisdiction over the other defendant, charged with being jointly liable. Defendants being engaged in a common undertaking, were

liable as joint tort feasors notwithstanding their alleged negligent acts were not simultaneous.

6. Jurisdiction—*Joint Tort Feasors—Jurisdiction Over One Joint Tort Feasor Confers Jurisdiction Over the Other—Defendant Made a Party in Order to Obtain Jurisdiction Over Codefendant—Case at Bar.*—In the instant case, an action against two carriers for damages to two car-loads of strawberries during transportation, it was contended by plaintiff in error, one of the carriers, that. the other carrier was made a codefendant for the sole purpose of obtaining jurisdiction over the plaintiff in error. The only criterion by which this contention could be solved was the declaration itself. There was nothing on the face of the declaration to support the claim. No plea raising the question of fraud was filed in the record.

   *Held:* That unless the court could say, from an inspection of the pleadings, that the defendant in error knew that the codefendant was without fault, then it should not assume that fraud was being perpetrated.

7. Venue—*Foreign Railroad Company Owning Property in the State—Resident of the State for Purposes of suit.*—A foreign railroad company engaged in interstate commerce, operating a part of its road in this State, owning permanent real property in the State—depots and its right of way—as well as personal property, such as cars, has become a resident of this State for the purpose of suit, and personal judgments may be rendered against it after due service of process. It is so far a resident in the counties or cities in which it operates its road, that it is within the purview of section 3049 of the Code of 1919, fixing the venue of actions and suits, and may there be sued alone or in conjunction with others, natural or artificial, residing elsewhere in the State.

8. Appeal and Error—*Assignment of Error—Records—Identification of Exhibits—Case at Bar.*—In the instant case, an assignment of error urged that the trial court erred in "allowing in evidence the so-called tariff known as exhibit 9." While expressing some doubt as to this exhibit being properly incorporated in the record for the reason that it was not identified in the usual way by the trial court, (that is, by placing a distinct mark of identification upon it), the Supreme Court of Appeals did not refuse to consider the assignment because the view it took of the matter did not militate against the rights of the defendant in error.

9. Appeal and Error—*Point not Raised Below—Admission of Railroad Tariff not Effective when Cause of Action Arose.*—In an action against two carriers for damages to goods transported by them, defendants objected to the admission in evidence of a railroad's tariff, on the ground that it did not become effective until after the cause of action arose.

   *Held:* That had this objection been urged before the trial court it should have been sustained. But it was not so urged.

10. Appeal and Error—*Harmless Error—Admission of Railroad's Tariff in Action Against Carriers, Tariff not Properly Certified by Interstate Commerce Commission—Case at Bar.*—In the instant case, an action against two carriers for damages to strawberries while in transit, defendants objected to the admission in evidence of a railroad's tariff because it had not been "properly certified by the interstate commission." The tariff was introduced to show that refrigerator cars should be iced at least twelve hours before loading. Before the offer to introduce the tariff had been made, two witnesses were permitted to testify without objection that the refrigerator cars should be pre-cooled from ten to twelve hours before loading.

   *Held:* That the admission of the tariff did not constitute reversible error.

11. Carriers—*Refrigerator Cars—Presumption that Cars Have Been Properly Iced.*—When a fruit car has been placed by a carrier, for the purpose of being loaded, the shipper has the right to presume that the car has been properly iced.

12. Carriers—*Instructions—Carriers as Insurers—Refrigerator Cars—Case at Bar.*—In the instant case, an action against a carrier for damages to strawberries shipped over its line, the trial court instructed the jury that it was the duty of the carrier to furnish a refrigerator car in good condition, to pre-ice this car a reasonable length of time before it was loaded and to re-ice it as often as necessary and that if the jury believed that the strawberries were in good condition when delivered to the carrier, but the carriers failed to perform these duties and that by reason thereof the strawberries reached their destination in a damaged condition, they should find for the plaintiff. The carrier objected to this instruction that it told the jury that the carriers were insurers of the products shipped.

   *Held:* That the instruction could not be so construed, especially in view of another instruction which told the jury that the carriers were not insurers of the strawberries in question.

13. Instructions—*Preparation of Instructions—Demand for Instructions—Instruction by Court of its Own Motion.*—The instructions given the jury in a case are usually prepared by counsel, though when given they are the instructions of the court. There is no statute or rule of practice which requires the court, of its own motion, to instruct the jury as to the law of the case; nor is it usual for the trial court to give instructions, unless requested, except where the court deems it necessary to instruct the jury to prevent a failure of justice.

14. Instructions—*Time Afforded Counsel to Prepare Instructions—Refusal of Court to Grant Additional Time—Discretion of Trial Court—Appeal and Error.*—Where ample time has been afforded counsel to prepare and present their instructions, the refusal of the trial court to grant additional time to hear argument on instructions will not of itself be sufficient ground upon which to base a reversal of the case. The

giving or refusing of instructions at a late stage of the case must rest in the sound discretion of the court, and unless the appellate court can say that there has been a failure of justice, caused by the action of the trial court, the ruling thereon will not be disturbed.

15. Instructions—*Time of Offering Instructions—Refusal of Court to Give Instructions Offered After Ample Time had Been Allowed Counsel as to Instructions—Case at Bar.*—In the instant case the court, at night on the first day of the trial, took up and heard at length in court the matter of instructions and allowed all counsel to take up all matters of the instructions fully. On the second day of the trial the court refused to grant two instructions offered by counsel on the ground that they were offered too late after ample time and opportunity had been allowed counsel as to instructions. No excuse was offered why the instructions were not presented earlier.

*Held:* That it could not be said that the trial court abused its discretion in refusing to grant the instructions.

16. Carriers—*Shipments of Strawberries—Instructions—Contributory Negligence of Plaintiff—Case at Bar.*—A railroad tariff was to the effect that berries should not be taken hot from the field for shipment. A witness testified in the instant case that the berries in question had been gathered from two to four hours before loading and were in good condition when loaded. From this evidence the court could not conclude as a matter of law that the berries were hot and not in shipping condition. There was no evidence to contradict the evidence of the witness that the berries were in good condition, and therefore no evidence upon which to base an instruction, that if plaintiff contributed to the damage, the jury should find for defendants.

17. Carriers—*Refrigerator Cars—Re-Icing—Case at Bar.*—In the instant case, an action for damage to strawberries during transit, an instruction that told the jury that there was no duty on the carriers to re-ice the cars except at regular icing stations was contrary to the terms of the contract of shipment as evidenced by the bills of lading which called for stated refrigeration instead of re-icing at regular stations only, and, therefore, the instruction was properly refused.

18. Instructions—*Repetition—Instructions Fairly Covering the Theory of Plaintiff in Error.*—Where the instructions given fairly presented the theory of the plaintiff in error to the jury, it was not reversible error to refuse others.

Error to a judgment of the Circuit Court of North-ampton county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Jas. G. Martin & Bro.*, for the plaintiff in error.

*Louis S. Sacks, James E. Heath*, and *W. A. Dickinson*, for the defendant in error.

*Mann & Townsend*, amici curiae.

Campbell, J., delivered the opinion of the court.

This action of trespass on the case was brought by J. E. Bowden and Company against the Seaboard Air Line Railway Company and the Pennsylvania Railroad Company, to recover damages to two carloads of strawberries shipped during the months of February and March, 1923, from Plant City, Fla., to Philadelphia, Pa.

There was a trial by a jury, which resulted in a verdict and judgment against the plaintiff in error. To that judgment this writ of error was awarded.

At the April rules, 1924, the plaintiff in error filed a plea in abatement which avers:

"That this court ought not to have or take any further cognizance of the action aforesaid of said plaintiff against this defendant, Seaboard Air Line Railway Company, because this defendant says that the supposed cause of action in the declaration in this cause mentioned did not, nor did any part thereof, arise in said Northampton county, Virginia, nor within the jurisdiction of this court, but that said supposed cause of action arose outside of the State of Virginia, to-wit, in the State of Florida, and that at the time of the service of the writ in this case, and for many years next preceding that time, and ever since then, the

defendant, Seaboard Air Line Railway Company, did not reside in Northampton county, Virginia; nor did this defendant, Seaboard Air Line Railway Company, have its principal office in Northampton county, Virginia; nor did the chief officer of this defendant, Seaboard Air Line Railway Company, reside in Northampton county, Virginia. In fact, the principal office of this defendant, Seaboard Air Line Railway Company, is, and for many years has been, situated in the city of Petersburg, in the State of Virginia, and likewise, its chief officer resides, and for many years past has resided, in the city of Baltimore, in the State of Maryland. That this defendant, Seaboard Air Line Railway Company, is a corporation chartered under the laws of the State of Virginia, with its principal office in the city of Petersburg, in the State of Virginia.

. "That Pennsylvania Railroad Company, the other defendant in this cause, is a foreign corporation, created under the laws of the State of Pennsylvania, and is not, and never has been, a resident of said Northampton county, Virginia; nor has its chief officer ever been a resident of that county.

"And this the defendant, Seaboard Air Line Railway Company, is ready to verify.

"Wherefore, this defendant, Seaboard Air Line Railway Company, prays judgment whether this court can or will take any further cognizance of the action aforesaid."

The motion of the defendant in error to strike this plea from the record was sustained, and this action of the court constitutes the first assignment of error.

[1] In order to determine whether or not the court was correct in its ruling, we must look to the plea, for it must stand without the aid of extrinsic evidence to support it.

[2] In *Va. & S. W. R. Co.* v. *Hollingsworth,* 107 Va. 359, 58 S. E. 572, it is held that the venue of all actions in this State, whether local or transitory, is fixed by statute. So much of the statute as is pertinent to the case at bar is as follows:

"Sec. 6049. The county or corporation in which actions at law or suits in equity may be brought.—Any action at law or suit in equity, except where it is otherwise especially provided, may be brought in any county or corporation—

"First. Wherein any of the defendants may reside.

"Second. If a corporation be a defendant, wherein its principal office is, or wherein its mayor, rector, president, or other chief officer resides.

"Third. If it be to recover a loss under a policy of insurance, either upon property or life, wherein the property insured was situated at the date of the policy, or the person whose life was insured resided at the date of his death, or at the date of the policy.

"Fourth. If it be to recover land, or subject it to a debt, wherein such land or any part thereof may be; or if it be against a foreign corporation, wherein its statutory agent resides, or it has any estate or debts owing to it within this State; or if it be against a defendant who resides without this State, wherever he may be found and served with process, or may have estate or debts due him  *   *  ."

The defendant, Pennsylvania Railroad Company, operates a line of railroad through the county of Northampton and has estate situated therein.

The strawberries involved in this action were transported by both defendants. It is, therefore, argued that, since the defendants were engaged in a common undertaking, they were liable as joint tort feasors, notwithstanding their alleged negligent acts were not simultaneous.

[3] To constitute the plea in abatement a sufficient one, it must negative every ground of jurisdiction enumerated in the statute. *Deatrick* v. *State Life Ins. Co.*, 107 Va. 611, 59 S. E. 489.

[4] In the petition for a writ of error it is alleged that this rule has been fully complied with. We are of a different opinion. While the plea does meet the requirements of the statute in most particulars, it is fatally defective in that it fails to deny that the codefendant, the Pennsylvania Railroad Company, had estate in Northampton county, or was doing business therein. The fact that the Pennsylvania Railroad Company was a foreign corporation and had estate in the county gave the court jurisdiction over it, under the provisions of section 6049 of the Code.

In *Guarantee Co.* v. *National Bank*, 95 Va. 485, 28 S. E. 911, it is said by Judge Riely: "A foreign corporation, for the purposes of suit, may become a resident of each State in which it does business under the laws thereof."

[5] Thus, having jurisdiction over one defendant, it follows that it was not error for the court to assume jurisdiction over another defendant charged with being jointly liable.

[6] It is strongly contended by the plaintiff in error that this rule should not apply, for the reason that the Pennsylvania Railroad Company was made a codefendant in this action for the sole purpose of obtaining jurisdiction over the plaintiff in error. The only criterion by which this contention is to be solved is the declaration itself. There is nothing on the face of the declaration to support this claim. No plea, raising the question of fraud, is filed in the record. Unless the court could say, from an inspection of the pleadings, that the defendant in error knew that the codefend-

ant, Pennsylvania Railroad Company, was without fault, then it should not assume that a fraud was being perpetrated.

In *Norfolk & W. R. Co.* v. *Crull*, 112 Va. 156, 70 S. E. 523, it is said: "In the case at bar the negligence complained of was failure to care for the horses from St. Louis to Norfolk. It consisted in failure to feed, rest and otherwise care for the horses in a reasonable way; and it would be impossible for the consignee to show what proportion of the neglect occurred on one road and what on the other. He can only show that proper care was not taken of the horses between the point of shipment and the point of destination. He, therefore, exercises his right to sue the wrongdoers jointly and under such circumstances there can be a joint judgment."

[7] The Pennsylvania Railroad Company as stated is engaged in interstate commerce and operates a part of its road in this State. It owns permanent real property in this State—depots and its right of way—as well as personal property, such as cars. It has become a resident of this State for the purposes of suit, and personal judgments may be rendered against it after due service of process. It is so far a resident in the counties or cities in which it so operates its road, that it is within the purview of section 6049 of the Code, fixing the venue of actions and suits, and may there be sued alone or in conjunction with others, natural or artificial, residing elsewhere in the State. In the instant case, the shipment originated in the State of Florida, and was delivered to the Pennsylvania Railroad beyond the confines of this State, and the initial carrier could have been readily sued, either alone, or in conjunction with the Pennsylvania road, in Petersburg, where the initial carrier has its principal office. If

it was not the intention of the legislature to give venue to the courts of Accomac and Northampton in cases of this kind, it will be necessary to change the language of section 6049 of the Code.

Another assignment of error urged is that the court erred "in allowing in evidence the so-called tariff known as exhibit 9."

[8] While we express some doubt as to this exhibit being properly incorporated in the record, for the reason that it is not identified in the usual way by the trial court (that is, by placing a distinct mark of identification upon it), we will consider the assignment, because the view we take of the matter does not militate against the rights of the defendant in error.

[9, 10] One of the objections urged in the petition against the admission of this tariff is that it did not become effective until December 30, 1924. Had this objection been urged before the trial court, it should have been sustained. But it was not so urged. The objection relied on was that the tariff had not been "properly certified by the Interstate Commerce Commission." The tariff was introduced to throw light on the length of time a fruit car should be iced before being loaded. That part of the tariff relied on is as follows: "Cars should be iced at least twelve hours in advance to establish a good circulation of cool air before starting to load."

Before the offer to introduce the tariff had been made, two witnesses were permitted to testify, without objection, as to the necessity of pre-cooling the car before loading of same. In this examination-in-chief, J. E. Bowden was asked the following questions and gave the following answers:

"Q. Is it important in the shipment of such a commodity as strawberries; in fact, is it important in the

shipment of all commodities which go into refrigerating cars, that the car should be pre-cooled before the load is put into it?

"A. Yes, sir.

"Q. Do you know how long it ought to have been pre-cooled before the shipment was loaded into it?

"A. Ten to twelve hours."

In answer to the question: "How long ought a car to be pre-iced before strawberries are put into it?" L. M. Norman, testifying as an expert, said: "A car should be iced at least twelve hours before loading."

In the light of this evidence, we do not think the admission of this exhibit constitutes reversible error.

The next assignment of error relates to the granting of two instructions, upon the motion of the defendant in error.

Instruction "A" told the jury "that it was the duty of the Seaboard Air Line Railway Company to furnish for each shipment involved in this case a refrigerator car in good condition; to pre-ice this car a reasonable length of time before it was loaded, so that it would be in a reasonably cooled condition when loaded; and to re-ice the said car as often thereafter as was necessary in order to keep the strawberries properly refrigerated. If you believe from the evidence that the plaintiffs' strawberries were in good, sound condition when delivered to the said carrier, but that the said defendant failed to perform its duties, or any of them, as above set forth, and that, by reason thereof, the said strawberries reached Philadelphia in a damaged condition, then you should find for the plaintiffs. And the court further instructs you that, if you should find for the plaintiffs, the measure of their damages is the difference between the fair market price of such berries in good condition in Philadelphia

on March 5th, and March 17th, respectively, and what said berries actually brought."

[11, 12] We perceive no error in the giving of this instruction. When a fruit car has been placed by a carrier, for the purpose of being loaded, the shipper has the right to presume that the car has been properly iced. The criticism made of this instruction is that it tells the jury that the carrier was an insurer of the products shipped. We do not so construe the instruction, and this view is fortified by the fact that the court, upon motion of the plaintiff in error, instructed the jury as follows:

"The court instructs the jury that the carriers were not insurers of the strawberries in question, neither was it the duty of the carriers to use the highest degree of care in carrying the strawberries, but merely to use reasonable care under the circumstances, having reference to the perishable character of the commodity being transported."

The plaintiff in error also complains of the refusal of the court to give certain instructions upon its motion. The facts in regard thereto are set forth in bill of exceptions No. 4, which reads as follows:

"Be it remembered that on the trial of this case, after the introduction of the evidence shown in bill of exceptions No. 1 in this cause, which is hereby referred to and made part hereof, and after the court had, at night after supper on the first day of the trial, taken up and heard at length in court the matter of instructions, and had at that night session allowed all counsel to take up all matters of the instructions fully; on the second day of the trial, as soon as court opened, counsel for said Seaboard Air Line Railway Company offered each of the following two instructions marked respectively 'Y' and 'Z' and asked the court to grant each

of these instructions (at that time no instructions having yet been read to the jury), but the court ruled that it would not consider either of these two instructions nor grant either of them, on the ground that they were offered too late, after ample time and opportunity had been allowed counsel as to instructions; and to the action of the court in not considering each of these instructions, said Seaboard Air Line Railway Company at the time duly excepted."

[13] The instructions given the jury in a case are usually prepared by counsel, though when given they are the instructions of the court.  There is no statute or rule of practice which requires the court, of its own motion, to instruct the jury as to the law of the case; nor is it usual for the trial court to give instructions, unless requested, except where the court deems it necessary to instruct the jury to prevent a failure of justice.  *DuPong Co.* v. *Snead*, 124 Va. 177, 97 S. E. 812.

In the matter of hearing arguments upon the instructions offered by counsel, it is an open secret that the trial courts are most patient.  Few complaints have been offered on this score, as evidenced by the few decisions on the subject.

[14] Where ample time has been afforded counsel to prepare and present their instructions, the refusal of the trial court to grant additional time to hear argument on instructions will not of itself be sufficient ground upon which to base a reversal of the case.  The giving or refusing of instructions at a late stage of the case must rest in the sound discretion of the court, and unless the appellate court can say that there has been a failure of justice, caused by the action of the trial court, the ruling thereon will not be disturbed.

For cases in which instructions were given at a late

stage of the case, see *Hoge* v. *Turner*, 96 Va. 624, 32 S. E. 291; *Standard Paint Co.* v. *Vietor & Co.*, 120 Va. 595, 91 S. E. 752.

[15] In the instant case, since no excuse was offered why the instructions were not presented earlier (ample time having been given counsel to present same), we are unwilling to say the trial court abused the discretion vested in it. We are further of the opinion that instructions "Y" and "Z" should not have been given in any event.

[16] Instruction "Y" told the jury that "if they believe from the evidence that any lack of reasonable care on the part of the plaintiffs either caused or contributed to any damage of the strawberries it is the duty of the jury to find for the defendants as to such damage, even if they believe from the evidence that the defendants were also negligent."

This instruction is based upon a recital in the tariff exhibit, discussed *supra*, to the effect that berries should not be taken hot from the field to the car. The witness, Bowden, testified that the berries in question had been gathered from two to four hours before loading same on the cars; that they were in good condition when loaded on the car. From this evidence the court could not conclude as a matter of law that the berries were hot and not in shipping condition. Whether or not the berries were in such a condition as to render the shipping of them a hazardous undertaking, was a question of fact. There is no evidence that contradicts the evidence of the witness, Bowden, that the berries were in good condition when loaded on the cars, and therefore no evidence upon which to base the instruction.

[17] Instruction "Z" told the jury there was no duty on the carriers to re-ice the cars, except at regular

icing stations.   This instruction is contrary to the terms of the contract of shipment, as evidenced by the bills of lading, which call for stated refrigeration instead of re-icing at regular stations only.

[18] In addition to instructions "Y" and "Z," the court refused instructions 5, 8 and 9.  Upon motion of the plaintiff in error, the court gave eight instructions. These instructions fairly presented the theory of the plaintiff in error to the jury, and it was not reversible error to refuse instructions 5, 8 and 9.

Plaintiff in error also assigns as error the refusal of the court to dismiss the case as to it, for want of jurisdiction.   This assignment involves the question dealt with in discussing the plea in abatement and is without merit.

The last assignment of error is the refusal of the court to set aside the verdict, because contrary to the evidence and without evidence to support it.

There is no merit in this assignment.  The question of negligence was submitted to the jury, who found against the plaintiff in error, having before them ample evidence upon which to base a verdict.

Upon the whole case, the judgment complained of must be affirmed.

*Affirmed.*