## Wytheville.

## Chesapeake and Ohio Railway Company v. W. C. Crenshaw & Co., Inc.

June 16, 1927.

Absent, Prentis, P.

1. Connecting Carriers—*Liability of Delivering Carrier—Goods Delivered to Initial Carrier in Good Condition—Perishable Goods—Presumptions and Burden of Proof—Case at Bar.*—If perishable goods, melons, were delivered to the initial carrier in good condition, and by that carrier delivered to the defendant carrier, and by it transported to the point of destination and offered to the consignee in bad condition, then there is a *prima facie* presumption of law that the damage accrued to the goods while they were in the possession of the defendant; and the burden of proof is upon the defendant to show that the damage to the melons did not accrue while in its possession.

2. Connecting Carriers—*Liability of Delivering Carrier—Goods Delivered to Initial Carrier in Good Condition—Perishable Goods—Instructions—Case at Bar.*—The instant case was an action by a shipper against the delivering carrier for damages to a shipment of melons. The trial court instructed the jury that defendant carrier was not liable for any damages which might be due solely to the inherent nature of the melons to deteriorate or decay; and if the jury should believe from the evidence that the damage to the melons in this case was due solely to the inherent nature of said melons to deteriorate or decay, they, the jury, should find for the defendant; and that the burden of proof of establishing this defense is upon the defendant.
   *Held:* No error.

3. Carriers—*Interstate Shipments—By What Law Governed—Case at Bar.*—In the instant case, the shipment involved being an interstate shipment, the rights and liabilities in respect of damage thereto depend upon acts of Congress, agreement between the parties and common law principles accepted and enforced in the Federal courts.

4. Carriers—*Insurer—Non-Perishable Goods.*—A common carrier is an insurer of non-perishable goods delivered to it for transportation against damage or loss occasioned by its own negligence, and all

other loss or damage, except such loss or damage caused by the act of God, the public enemy, the act of the shipper, or public authority.

5. CARRIERS—*Insurer—Perishable Goods.*—With respect to perishable goods, which themselves contain the elements of destruction governing their loss or deterioration, the carrier is not an insurer. The carrier is not an insurer against loss caused by the inherent nature, vice, defect·or infirmity of the goods, Thus the carrier, when not himself at fault, is not liable for the decay of fruit, the evaporation of liquids,·the bursting of a hogshead of molasses due to fermentation and the like.

6. CONNECTING CARRIERS—*Liability of Delivering Carrier—Goods Delivered to Initial Carrier in Good Condition—Perishable Goods—Instructions—Case at Bar.*—In an action by a shipper against a carrier for damage to perishable goods, an instruction that the carrier is not liable if the damage to the goods, melons, was solely due to the inherent nature of the melon to deteriorate an'd decay, was not in conflict with other instructions given which primarily dealt with the burden of proof as to the cause of the damage of the goods.

7. CARRIERS—*Damage to Goods—Goods Delivered to Carrier in Good Condition—Presumptions and Burden of Proof.*—When property has been delivered in good condition to a carrier, and it has been damaged while in possession of such carrier, nothing else appearing, the necessary presumption is that there has been negligence on the part of the carrier; and the inevitable legal conclusion is that the burden is cast upon the carrier to remove this presumption.

8. CARRIERS—*Damage to Goods—Goods Delivered to Carrier in Good Condition—Presumptions and Burden of Proof—Perishable Goods.*—When goods are damaged in the hands of the carrier the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage; and no exception to the rule arises from the fact that the goods are perishable or liable to deteriorate rapidly from internal causes.

9. CARRIERS—*Damage to Goods—Goods Delivered to Carrier in Good Condition—Presumptions and Burden of Proof—Perishable Goods.*—The burden is on the carrier to show that it is not responsible for damages which accrue to perishable goods delivered in good condition to the carrier by the consignor and received in bad condition by the consignee.

10. CARRIERS—*Goods Delivered in Good Condition—Presumptions and Burden of Proof—Reason for the Rule.*—The carrier's exclusive possession of evidence, the difficulties under which the bailor might labor in discovering and proving the carrier's fault, his inability to contradict the carrier's witnesses, the necessity of avoiding the investigation of circumstances impossible to be unraveled, the importance

of stimulating the care and fidelity of the carrier, and the convenience of a simple, intelligible and uniform rule in so extensive a business; in other words, commercial necessity plus public policy and convenience, are the basis for the acceptance of the rule at the present time.

Error to a judgment of the Law and Equity Court, Part Two, of the city of Richmond in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Leake, Leake & Spicer,* for the plaintiff in error.

*Bethel & Williams,* for the defendant in error.

Campbell, J., delivered the opinion of the court.

The defendant in error, hereinafter called plaintiff, filed its notice of motion to recover damages against the railway company, called defendant, for alleged injuries to a carload shipment of honeydew melons. The shipment, which consisted of four hundred and sixty-five crates and was transported in a refrigerator car, was originally delivered for transportation to the Atchison, Topeka and Santa Fe Railway Company, at Alhambra, Arizona, on August 7, 1924, and was consigned by the shipper, Gerrard Company, to itself at Corinth, Ill. Upon arrival at the latter point, the car was diverted to the plaintiff at Richmond.

The shipment arrived at Richmond in due course, August 18th, and, without unloading the car, plaintiff diverted it to a customer at Norfolk, Virginia. When the car arrived at Norfolk on the 19th the customer, on account of the bad condition of the melons, declined to receive the shipment.

There was a trial by jury, which resulted in a verdict for the plaintiff. This verdict the trial court refused to set aside and thereupon entered the judgment here complained of.

It is conceded by the defendant that the legal principles involved in the instant case are similar in nature to those involved in the two cases of *C. & O. Ry. Co.* v. *W. C. Crenshaw & Co., Inc.*, 147 Va. 290, 137 S. E. 515, and *C. & O. Ry. Co.* v. *Timberlake, Currie & Co., Inc.*, 147 Va. 304, decided by this court on March 17, 1927 (137 S. E. 507, 515). As petitions for rehearing are pending in those cases, we will enter upon a discussion of the questions raised in the case at bar, for the conclusion reached by the court in this case will necessarily dispose of the motions to rehear.

The evidence of the plaintiff, that the melons were in good condition when delivered to the initial carrier, is not controverted.

[1] The respective contentions of the plaintiff and defendant are set forth in the instructions given and refused by the court. The instructions offered by the plaintiff and given by the court laid down the rule that if the melons in question were delivered to the initial carrier in good condition, and by that carrier delivered to the defendant, and by it transported to Norfolk and offered to the consignee in bad condition, then there is a *prima facie* presumption of law that the damage accrued to the melons while they were in the possession of the defendant, and that the burden of proof is upon the defendant to show that the damage done to the melons did not accrue while in its possession.

This principle is emphasized by another instruction which told the jury that a connecting carrier who has completed the transportation and delivered the goods to the consignee in a damaged condition must be held

liable for the damage to the goods, without proof that it was occasioned by its fault, unless it shows that it received the goods in a damaged condition.

The theory of the defendant embodied in the instructions refused is: (a) that a carrier does not guarantee or insure the delivery in a sound condition of perishable goods, such as melons, which contain within themselves elements of destruction, but is only required to exercise reasonable care and diligence to protect and preserve such goods as well as deliver them at destination with reasonable dispatch; (b) that where the damage to perishable goods shows that such damage could not have accrued but for the inherent tendency of the goods themselves to deteriorate and decay, the burden of proof is on the shipper to show some negligence on the part of the carrier which contributed to the damage; (c) that, although there is a presumption arising upon satisfactory proof of delivery of goods to the initial carrier in good condition and their arrival at destination in a damaged condition, that the damage accrued while in the custody of the terminal carrier, this presumption may be rebutted and shown to be untrue.

[2] The court, of its own motion, over the objection of the defendant, gave the following instruction:

"The court instructs the jury that the defendant is not liable for any damages which may be due solely to the inherent nature of the melons to deteriorate or decay; and if the jury should believe from the evidence that the damage to the melons in this case was due solely to the inherent nature of said melons to deteriorate or decay, they, the jury, should find for the defendant.

"In this case the jury is further told that the burden of proof of establishing this defense is upon the defendant."

[3] The shipment involved being an interstate shipment, it is well settled that rights and liabilities in respect of damage thereto depend upon acts of Congress, agreement between the parties and common law principles accepted and enforced in the Federal courts. *Chicago & N. W. Ry.* v. *Whitnack Co.*, 258 U. S. 371, 42 S. Ct. 328, 66 L. Ed. 665.

[4] It is conceded by defendant that a common carrier is an insurer of non-perishable goods delivered to it for transportation against damage or loss occasioned by its own negligence, and all other loss or damage, except such loss or damage caused by the act of God, the public enemy, the act of the shipper, or public authority. The defendant denies that it is an insurer of perishable goods from loss due to their inherent nature and this denial is, we think, borne out by the weight of authority.

[5] In 4 R. C. L., section 200, we read: "While common carriers insure the delivery of the goods bailed unless the act of God, the public enemy, or the public authorities, intervene to prevent it, their duty in respect to the preservation of the property from deterioration is not of so high a character, and consequently they are not in all respects insurers that it will reach its destination in the same condition as it was when shipped. So, it seems that a common carrier is not liable for losses from the ordinary wear and tear on goods in the course of transportation, nor, when it undertakes to transport such commodities as fruit, vegetables, milk, butter, eggs, meat, fish or other perishable articles is it liable for loss or damage arising from their nature and inherent character, as for instance, when they succumb to the forces of natural decay, fermentation, or evaporation, as from liability for the destructive effects of the operation

of such laws of nature a carrier is as much absolved as he is from responsibility for a loss occasioned by a tempest, lightning, or other cause termed the act of God."

In 10 C. J., section 148, it is said: "With respect to perishable goods which themselves contain the elements of destruction governing their loss or deterioration, the carrier is not an insurer * *."

In *Chesapeake & Ohio Ry. Co.* v. *Timberlake, Currie & Co., Inc., supra,* Judge West quotes with approval from Dobie on Bailments and Carriers, section 116, as follows: "The carrier is not an insurer against loss caused by the inherent nature, vice, defect or infirmity of the goods. Thus the carrier, when not himself at fault, is not liable for the decay of fruit, the evaporation of liquids, the bursting of a hogshead of molasses due to fermentation, and the like."

This same principle was recognized in *Seaboard Air Line Ry.* v. *J. E. Borden & Co.,* 144 Va. 154, 131 S. E. 245. See Hutchison on Carriers (3d ed.), section 334; *Philadelphia B. & W. R. R. Co.* v. *Diffendal,* 109 Md. 494, 72 Atl. 193, 458; Elliott on Railroads.

[6] That the learned judge of the trial court recognized this principle is evidenced by his giving to the jury, of his own motion, the instruction set forth in full, *supra.* This instruction is not in conflict with the other instructions given, which primarily deal with the pivotal question in this case, viz: the burden of proof.

Due to the great improvement in modern shipping conditions, it is a matter of common knowledge that, under ordinary conditions, perishable commodities may not only be shipped without loss across the continent, but to parts of the world undreamed of when shipping was in its infancy. The inducement to the grower

or dealer to ship his perishable goods is the price to be obtained in a foreign market, while the inducement to the carrier to carry the same is a higher rate than it received from the transportation of non-perishable goods.

[7] The duty which a shipper of perishable goods owes to a carrier is, we hold, correctly set forth in *Pennsylvania R. Co.* v. *Naive*, 112 Tenn. 239, 79 S. W. 124, 64 L. R. A., page 449. The shipment involved was a carload of dressed poultry. In the opinion of the court we read: "The most that can be required of a shipper is that he shall deliver his goods to the carrier in good condition, properly packed or prepared for shipment. From that time forward they are committed to the custody and management of the carriers—the initial and connecting ones. In the nature of things, he can know nothing of their management of the business, while they—each of them as to its own relation to the matter—cannot, by means of their agents, fail to know all of the facts. It is nothing more than reasonable, therefore, that each, when sued for injury to the property, should be required to show that it has discharged its duty in respect thereto in the care of the property during transportation, and until delivery. When property has been delivered in good condition to a carrier, and it has been damaged while in possession of such carrier, nothing else appearing, the necessary presumption is that there has been negligence on the part of the carrier; and the inevitable legal conclusion is that the burden is cast upon the carrier to remove this presumption."

We now come to a consideration of the question: Was the burden of proof as to the cause of the damage to the melons upon the plaintiff or the defendant? We again advert to what was said in *Pennsylvania R. Co.* v. *Naive, supra.*

[8] In *Central R. R. Co.* v. *Hasselkus*, 91 Ga. 382, 17 S. E. 838, 44 Am. St. Rep. 39, it is said: "When goods are damaged in the hands of the carrier the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage; and no exception to the rule arises from the fact that the goods are perishable or liable to deteriorate rapidly from internal causes."

In *Transportation Co.* v. *Bloch Bros.*, 96 Tenn. 392, 6 S. W. 881, 6 Am. St. Rep. 861, it is said: "There is no proof that the loss resulted from the negligence of any one. But such proof is not necessary to entitle the plaintiffs to a recovery; for when goods in the custody of a common carrier are lost or damaged, the presumption of law is, that it was occasioned by his default, and the burden is on him to prove that it arose from a cause for which he is not responsible."

In *Chicago & N. W. Ry. Co.* v. *Whitnack Co., supra,* it is said: "Here there is no question of conflict between a state statute and any federal policy; and nothing in the words of the amendment indicates a legislative purpose to abrogate the accepted common law doctrine concerning presumption. The suggestion that by imposing additional liability upon the initial carrier the amendment provides an adequate remedy for shippers and thereby removes the necessity for any presumption against the terminal one and impliedly abrogates the rule, is unsound. There are adequate reasons why shippers should have the benefit of both; and we think Congress so intended."

We have cited the above cases as supplementary authority to the cases and textbooks cited with approval in the *Crenshaw case, supra.* In order, however,

to preserve the continuity of the decisions on the subject, we quote from the Virginia cases there cited and approved.

In *Southern Railway Co.* v. *Finley*, 127 Va. 132, 102 S. E. 559, which was a case involving a shipment of mules, Judge Prentis said: "*  *  there is much discussion in the briefs as to whether the burden of proof as to the cause of the damage was upon the plaintiffs or the company. In our view, the weight of authority is that such burden is upon the company when it receives for transportation live stock, in good condition, unaccompanied by the owner or his agent, and delivers it in damaged or bad condition."

In *Russell* v. *Southern Railway Co.*, 133 Va. 292, 112 S. E. 700, Judge Burks said: "A connecting carrier, who has completed the transportation and delivered the goods to consignee in a damaged condition, or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the consignee, and that the injury or loss occurred while they were in his possession."

See also *C. & O. Ry. Co.* v. *National Bank*, 122 Va. 471, 95 S. E. 454; *Murphy, Brown & Co.* v. *Staton*, 3 Munf. (17 Va.) 239, 6 Cyc. 382; 1 Moore on Carriers, section 559; Elliott on Railroads, section 492; Michie on Carriers, Vol. 1, section 1057; *Trowbridge* v. *Charleston, etc., Ry. Co.*, 90 S. C. 183, 73 S. E. 78.

To sustain their contention, counsel for the defendant rely upon *Adams Express Co.* v. *Allendale*, 116 Va.

1, 81 S. E. 42, Ann. Cas. 1916D, 894, and the authorities therein cited.

These cases involved shipments of live stock. An analysis of them discloses a state of facts which clearly distinguishes them from the instant case, and does not contravene the doctrine herein laid down.

That shipments are made daily of the delicacies of the tropics is manifest by the exhibits thereof in almost every grocery store, cafe, or delicatessen shop. That loss, by reason of such shipments, is of infrequent occurrence is evidenced by the comparatively few actions brought to recover damages therefor. This merely goes to show that the carrier, in assuming the burden of a safe shipment, has borne the burden without undue hardship.

[9] While there is respectable authority supporting the contention of the defendant, we think the weight of authority supports the conclusion that the burden is on the carrier to show that it is not responsible for damages which accrue to perishable goods delivered in good condition to a carrier by the consignor and received in bad condition by the consignee.

The reason for this conclusion is, we think, admirably stated in 4 R. C. L., section 176, as follows:

[10] "The carrier's exclusive possession of evidence, the difficulties under which the bailor might labor in discovering and proving the carrier's fault, his inability to contradict the carrier's witnesses, the necessity of avoiding the investigation of circumstances impossible to be unraveled, the importance of stimulating the care and fidelity of the carrier, and the convenience of a simple, intelligible and uniform rule in so extensive a business; in other words, commercial necessity plus public policy and convenience, constitute much broader grounds and are the basis for the acceptance of the rule at the present time.

"In its application there is less of hardship than has sometimes been supposed; for while the law holds the carrier to an extraordinary degree of diligence, and treats him as an insurer of the property, it allows him, like other insurers, to demand a premium proportioned to the hazards of his employment. At all events, such severity as may inhere in the rule seems necessary to the security of property and the protection of commerce; it is founded on a great principle of public policy; has been approved by many generations of wise men; and if the courts were now at liberty to make instead of declaring the law, it may well be questioned whether they could devise a system which on the whole would operate more beneficially."

We are of opinion to affirm the judgment of the trial court.

*Affirmed.*