# Richmond.

## JOHN NIX & CO., A CORPORATION v. THOMAS A. HERBERT.

### November 17, 1927.

1. WAREHOUSES AND WAREHOUSEMEN—*Action for Injury to Goods Stored—Burden of Proof as to Negligence of Warehouseman—Goods Delivered in Good Condition.*—The general rule in regard to bailment of non-perishable goods is that the burden of proof is on the bailor to show that the loss of or injury to goods was due to the negligence or other fault of the warehouseman; but it is sufficient if he proves facts from which such negligence or fault may be presumed, so as to make a *prima facie* case.  Upon proof that the goods were delivered to the warehouseman in good condition, the warehouseman will be liable for any loss or injury to them while in his custody, and for the value of any goods not accounted for by him, unless he affirmatively establishes that such loss or injury was not due to his failure to exercise due care.

2. WAREHOUSES AND WAREHOUSEMEN—*Cold Storage—Liability of Warehouseman—Insurer.*—While a cold storer is in no sense an insurer of the perishable goods committed to his care, and is only liable for a breach of the statutory duty imposed upon him, yet, by reason of the peculiar nature of the enterprise in which he is engaged, he stands upon a different footing from that occupied by the ordinary warehouseman.

3. WAREHOUSES AND WAREHOUSEMEN—*Cold Storage—Apples.*—One who commits his apples to a cold storer has the right to expect—not preservation—for that is impossible beyond a certain period—but a prevention of decay for a reasonable period, depending upon the circumstances of each particular case.

4. WAREHOUSES AND WAREHOUSEMEN—*Liability of Warehouseman—Sections 1310 and 1323 of the Code of 1919—Notice of Deterioration.*—Section 1310 of the Code of 1919 provides that a warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise.  If the warehouseman, in the storage of the goods, has exercised the due care required of him by this statute, he is fully protected by section 1323 of the Code of 1919, which provides that if the goods are of a perishable nature, he may

give notice to the owner to remove the goods in the event of deterioration of the same.

5. Warehouses and Warehousemen—*Liability of Warehouseman—Section 1310 of the Code of 1919—Presumptions and Burden of Proof.*—The fact that section 1310 of the Code of 1919 only requires the exercise of due care is not conclusive of the question of the burden of proof when perishable goods have been damaged while in cold storage. This statute is but declaratory of the common law and in no sense was it the intention of the legislature to declare upon whom the burden of proof should rest. It has no reference to the question of *prima facie* negligence, nor to the question of the presumption of negligence.

6. Warehouses and Warehousemen—*Cold Storage—Deterioration of Apples in Cold Storage—Presumption and Burden of Proof—Case at Bar.*—The instant case was an action against a warehouseman for deterioration of apples stored with the warehouseman. There was no written contract. It was the contention of plaintiff that the apples, when delivered to the defendant, were sound, and when redelivered were affected by scald. The court instructed the jury that the burden of proof rested on the owner of the apples to prove by a preponderance of evidence that the loss sustained was due to the failure of the warehouseman to exercise such care as a reasonably prudent owner of similar goods would exercise, and that negligent acts or omissions of the warehouseman causing the injury must be affirmatively proved.

   *Held:* Error.

7. Bailments—*Carriers—Warehouseman—Burden of Proof where Goods are Delivered by Bailor to Bailee in Good Condition.*—The burden is on a carrier or warehouseman to show that it is not responsible for damages which accrue to perishable goods delivered in good condition to the carrier or warehouseman by the consignor or owner of the goods and received in bad condition by the consignee or owner of the goods. Conditions are similar, if not identical, in the case of a warehouseman and a carrier. The storer, like the carrier, has absolute control of the goods. The owner has no opportunity, except perhaps by permission, to observe conditions, and no power to alter them.

Error to a judgment of the Circuit Court of Albemarle county in an action of assumpsit. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Allen & Walsh*, for the plaintiff in error.

*Gilmer & Graves*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Plaintiff in error brought an action of trespass on the case in assumpsit against Thomas S. Herbert, in the Circuit Court of Albemarle county, to recover damages for loss and injury to 4577 barrels of apples stored in the cold storage warehouse of the defendant, Herbert, situated at Crozet, Virginia.

There was a verdict in the lower court in favor of the defendant. We are asked to set aside this verdict and remand the case for a new trial because the court erred in giving and refusing certain instructions hereinafter referred to, and in refusing to set aside the verdict as contrary to the law and the evidence.

Plaintiff, a New York corporation, is a large buyer of apples. In the fall of 1923, it, through its agent, bought the apples in controversy and stored same in the cold storage plant of defendant. No written contract for storage was entered into, but upon delivery of the apples from day to day during the months of September and October, non-negotiable warehouse receipts were issued by the defendant, which later were replaced by the delivery of negotiable receipts.

In the absence of a written contract, reliance is placed upon section 1310, Code 1919, as to care required of the defendant in storing the apples. This statute fixes the liability of a warehouseman as follows: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall

not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.''

While the statute makes no mention of the proper degree of temperature for keeping apples, it is shown by the weight of the evidence that the proper degree of temperature is between thirty and thirty-two degrees F., though a variation of one degree either above or below is permissible under proper practice.

It is the contention of the plaintiff that the apples, when delivered to the defendant, were, by the usual tests of commerce, classed as sound, and that when redelivered they were affected by the scald. Scald is an apple disease which occurs in transportation and in storage. Scald is not rot or shrivelling. It is caused by changes within the fruit itself and not by the entrance of an organism therein which produces what is commonly called apple scab or blue mold. Scald occurs most frequently on light colored apples, and, while it does not affect in general the meat of the apple, beyond the extent of the part affected, it does most materially affect the selling price of the apple, as the apple presents an unattractive and an unwholesome appearance.

The advantage, according to the evidence of expert pomologists, in placing apples in cold storage as soon as possible after harvesting is to delay, if not prevent, the appearance of scald. The average storage life of an apple, when placed therein in good condition, is from September to June. It is uncontroverted that the apples in controversy were so affected with scald that they were disposed of in March, April and May.

[1] The general rule in regard to bailment of non-perishable goods is stated in 40 Cyc., page 470, thus:

"The general rule is that the burden of proof is on the bailor to show that the loss of or injury to goods was due to the negligence or other fault of the warehouseman; but it is sufficient if he proves facts from which such negligence or fault may be presumed, so as to make a *prima facie* case, and, therefore, by the great weight of authority, upon proof that the goods were delivered to the warehouseman in good condition, he will be liable for any loss or injury to them while in his custody, and for the value of any goods not accounted for by him, unless he affirmatively establishes that such loss or injury was not due to his failure to exercise due care."

[2] While a cold storer is in no sense an insurer of the perishable goods committed to his care, and is only liable for a breach of the statutory duty imposed upon him, yet, by reason of the peculiar nature of the enterprise in which he is engaged, he stands upon a different footing from that occupied by the ordinary warehouseman.

Refrigeration is a mechanical process of comparatively recent origin and requires experience and skill. One who places his goods in cold storage necessarily relies upon the expert knowledge of the cold storer. The charge for keeping perishable products in cold storage is much higher than that made for the storage of nonperishable goods.

[3] One who commits his apples to a cold storer has the right to expect—not preservation—for that is impossible beyond a certain period—but a prevention of decay for a reasonable period, depending upon the circumstances of each particular case. Without this expectation the storage of perishable products would be but a venture.

[4] If the warehouseman, in the storage of the goods,

has exercised the due care required of him by the statute, *supra,* he is fully protected by section 1323 of the Code, which provides that if the goods are of a perishable nature, he may give notice to the owner to remove the goods in the event of deterioration of the same.

[5] The fact that section 1310 of the Code only requires the exercise of due care is not conclusive of the question of the burden of proof when perishable goods have been damaged while in cold storage. This statute is but declaratory of the common law and in no sense was it the intention of the legislature to declare upon whom the burden of proof should rest. It has no reference to the question of *prima facie* negligence, nor to the question of the presumption of negligence.

[6, 7] After the introduction of evidence, the court gave the jury the following instructions:

"The burden of proof rests on John Nix & Company to prove by a preponderance of the evidence that they sustained the loss of which they complain, and that such loss was due to the failure of Thomas S. Herbert to exercise such care as a reasonably prudent owner of similar goods would exercise.

"Negligent acts or omissions of Thomas S. Herbert, if any, causing the injury must be affirmatively proved."

The giving of these instructions is assigned as error.

We are of opinion that this assignment of error is well founded. When the instant case was tried, the opinions in the case of *C. & O. Ry. Co.* v. *Crenshaw,* 147 Va. 290, 137 S. E. 515; *C. & O. Ry. Co.* v. *Timberlake, Currie & Co.,* 147 Va. 304, 137 S. E. 507; and *C. & O. Ry. Co.* v. *Crenshaw,* 148 Va. 48, 138 S. E. 467, had not been delivered.

We are of the opinion that the case at bar is ruled by

the doctrine laid down in the above cited cases. The conditions are similar, if not identical. The storer, like the carrier, has absolute control of the goods. The owner has no opportunity, except perhaps by permission, to observe conditions, and no power to alter them. It is inconceivable that a cold storer would permit numerous owners of stored goods to have free access to the storage rooms, with the probability of raising the temperature each time the door is opened.

In *C. & O. Ry. Co.* v. *Crenshaw*, 148 Va. 48, 138 S. E. 467, the court quotes with approval from R. C. L., section 176, as follows: "The carrier's exclusive possession of evidence, the difficulties under which the bailor might labor in discovering and proving the carrier's fault, his inability to contradict the carrier's witnesses, the necessity of avoiding the investigation of circumstances impossible to be unravelled, the importance of stimulating the care and fidelity of the carrier, and the convenience of a simple, intelligible and uniform rule in so extensive a business, in other words, commercial necessity, plus public policy and convenience, constitute much broader grounds and are the basis for the acceptance of the rule at the present time."

We think the same reason applies with equal force to a cold storage warehouseman.

In *C. & O. Ry. Co.* v. *Crenshaw & Co.*, 148 Va. 48, 138 S. E. 467, which involved the shipment of melons, the learned trial court, of its own motion, gave this instruction:

"The court instructs the jury that the defendant is not liable for any damages which may be due solely to the inherent nature of the melons to deteriorate or decay; and if the jury should believe from the evidence that the damage to the melons in this case was due solely to the inherent nature of said melons to deteri-

orate or decay, they, the jury, should find for the defendant.

"In this case the jury is further told that the burden of proof of establishing this defense is upon the defendant."

This instruction was approved and in the opinion of the court it is said: "While there is respectable authority supporting the contention of the defendant, we think the weight of authority supports the conclusion that the burden is on the carrier to show that it is not responsible for damages which accrue to perishable goods delivered in good condition to a carrier by the consignor and received in bad condition by the consignee."

To sustain this conclusion many authorities are cited in that opinion, and it is therefore unnecessary to set them forth again.

In *Holt Ice & Cold Storage Co.* v. *Arthur Jordan Co.*, 25 Ind. App. 314, 57 N. E. 575, the court approved an instruction which told the jury that the burden was upon the bailor to prove negligence, but that when he proved that he had delivered goods to the bailee in good condition and that the same were redelivered in a damaged condition, produced by a cause not inherent in the goods themselves, the bailor had made a *prima facie* case and cast upon the bailee the burden of accounting for the injury in some manner consistent with the exercise of due care.

In *Noel & Co.* v. *Schuur*, 140 Tenn. 245, 204 S. W. 632, the court approved the following instruction: "If the bailor, Schuur, shows by a preponderance of all the evidence that the goods were in good condition at the time they were delivered at the cold storage warehouse, but that when they were returned or withdrawn they were in a damaged condition from any cause not in-

herent in the goods themselves, at the time they were delivered to Noel & Co., then the bailor has made out a *prima facie* case, that is, a case sufficient for recovering unless rebutted or explained away by other evidence.    When such a showing is made, then it is incumbent upon the bailee, the cold storage company, to account for the damage in some manner, and by a preponderance of all the evidence, consistent with the exercise of ordinary care on its part."

Without setting them forth, we are of the opinion that, in their present form, the instructions offered by the plaintiff were properly refused by the court.

As the same will have to be remanded for a new trial, it would be improper to discuss the sufficiency of the evidence.

The judgment of the circuit court must be reversed, the verdict set aside, and the case remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*