The lower Court in a well written opinion has clearly set forth the issues and facts in this case. It is as follows:
"The plaintiff is a fruit dealer in the City of Alexandria, doing business under the trade name of the Rapides Fruit Company. He brings this suit for damages claiming that a shipment of citrus fruit consisting of oranges and grapefruit was delayed in shipment and arrived in a spoiled or damaged condition.
"Under the evidence in this case, it is shown that the car of fruit was loaded at McAllen, State of Texas; that the loading commenced at 8:00 A.M., February 17, 1943, and that it was completed and the car moved under a bill of lading at 2:00 A.M. on the following day, February 18th. The shipment was routed by the shipper over the railroad of the defendant company, herein referred to as the Southern Pacific, and shipped to the Rapides Grocery Company of Alexandria, Louisiana, the shipper designating that the car be delivered by the Missouri Pacific Railroad. On the night of February 18th, the shipper ordered the Southern Pacific to divert the car and deliver the same to the Rapides Fruit Company, with the same routing and the same destination. The diversion was accordingly made and the car arrived in Alexandria at 5:55 P.M., on February 20th, and was delivered to the Missouri Pacific for delivery, according to instructions given by the shipper. In the meantime the plaintiff was informed by his broker that the car would arrive on the second or third day after the diversion, and he began calling both the Southern Pacific and the Missouri Pacific asking if his car of fruit had arrived and each road replied in the negative. The car remained on the tracks of the Missouri Pacific from 5:55 P.M. February 20th, until February 22nd.
"The Southern Pacific called the delivering carrier, the Missouri Pacific, on February 21st, to confirm switching instructions, and learned on that date that the delivering carrier had not made delivery. The reason for its failure or inability to make delivery is not given, but when the defendant called on the morning of the 21st the Missouri Pacific for the first time informed the defendant that it could not make delivery. The defendant company then ordered the car returned to it for delivery and although the request was made in the morning, it was not returned during the entire day, but on the following morning, February 22nd, the defendant found the car in its yards at 7:30 A.M. The plaintiff was promptly notified and after the car was spotted, the plaintiff began unloading and found much of the fruit spoiled and decaying. With the consent of defendant company, the plaintiff reworked the different crates of fruit, separating the good from the bad. Figuring the value of the spoiled fruit at the price paid for it, it amounted to $191.03. Plaintiff also includes in his demand a refund of the unearned freight and the cost of his labor in reworking the carload of fruit, making a total of $250.56, which amount he claims as his total damages.
"This shipment originated in the State of Texas and was delivered in the State *Page 340 
of Louisiana on a through bill of lading, which made it an interstate shipment. The contract of carriage was executed in Texas. For that reason the law of Louisiana governing the transportation of freight in intrastate commerce, does not apply but rather the rules of the common law which apply in such cases.
"Anderson, Clayton Co. v. Y. M.V.R.R. Co., 174 La. [762], 763 [141 So. 453]; Charleston Western Carolina R.R. Co. v. Varnville Furniture Co. [237 U.S. 597, 35 S.Ct. 715], 59 L.Ed. 1137 [Ann.Cas. 1916D, 333]; Hall v. H.E. W.T.R. Co., 9 La.App. [577], 578 [121 So. 769].
"Under the principles of the common law, generally, a carrier is obligated to deliver merchandise entrusted to it for carriage in the condition in which it is received. However, this does not apply to perishable goods for the reason that such goods may, because of their inherent nature, become damaged without the fault of either the shipper or the carrier, but when perishables are delivered for shipment in sound condition and are delivered in a damaged condition, it then becomes the duty of the carrier, in order to escape liability, to show that the damage was due to no fault of its own. In other words, the establishment of these two facts makes out a prima facie case for the plaintiff.
"Taormina Corporation v. L.G.S.S. Co., [La.App.], 6 So.2d 235; Chesapeake Ohio Railroad Co. v. W.C. Crenshaw Co., [148 Va. 48], 138 S.E. 467, 53 A.L.R. 990; and authorities cited therein.
"In the present case, the plaintiff made no attempt to show that the fruit was loaded and shipped in good condition. The bill of lading stated that the merchandise was received in apparent good order, except as to the condition of the contents of the packages or crates which was unknown. Where merchandise is received for shipment in boxes and cannot be inspected internally, such a statement in the bill of lading is not evidence as to the actual condition of the goods within the boxes, but it only applies to the condition of the boxes externally in which the merchandise is contained.
"Amer.Jur. Vol. 9, Sec. 422; Taormina Corporation v. L.G.S.S. Co., supra.
"In the above case, the Court held that such a statement means only that from external appearance the shipment is in good order. This Court is of the opinion that no presumption in the present case can flow from such a statement in the bill of lading. If the shipment had moved with dispatch and regularity, the plaintiff could not recover as this case would not fall within that class of cases where the carrier would be called upon to explain the damages, where the perishable merchandise is received for shipment in good order and is delivered in bad order.
"Amer.Jur. Vol. 9, Sec. 834, 835; 53 A.L.R. 1002; and authorities therein cited.
"The defendant offered no evidence to show why the fruit was spoiled. It rests its case upon the proposition that it was not negligent in any manner; that it completed the contract of carriage by delivering the shipment, according to contract, to the Missouri Pacific, and since there was no proof that the shipment was in good order when received for shipment, it is not called upon to make any further proof in defense. This contention would be sound were it not for the fact that the Missouri Pacific was an intermediate carrier.
"Under the contract of carriage in this case, the defendant company obligated itself to safely deliver the merchandise to the Missouri Pacific for delivery. This it did without negligence. When it discovered that the Missouri Pacific had not delivered the merchandise, it requested that the car be sent back to it for delivery, and it then became the initial and delivering carrier. It then made proper delivery, but the Court can find no negligence on the part of the Southern Pacific in the method of handling this shipment. On the other hand, the Missouri Pacific could have made the delivery as well as the Southern Pacific. The plaintiff was well known in the City of Alexandria and was inquiring of the Missouri Pacific as well as of the Southern Pacific if the car had arrived. The Court finds that the Missouri Pacific was extremely negligent in not making any effort to deliver the car to the plaintiff and also negligent in not returning promptly the car to the Southern Pacific for proper delivery after a request was made. The Court is of the opinion that the damage was caused entirely because of the negligence of the Missouri Pacific in its delay as indicated.
"The question then is whether or not the plaintiff can recover from defendant, which becomes, as indicated, both the initial and delivering carrier in an interstate shipment on a through bill of lading. The Missouri Pacific was an intermediate carrier *Page 341 
and under the Carmack Amendment, the Court is of the opinion that the plaintiff can and should recover from the defendant company, the initial carrier. 49 U.S.C.A. § 20 (11).
"The item of unearned freight is contested by the defendant but no authorities have been cited to the Court by either the plaintiff or the defendant upon this point. There is nothing discovered by the Court in the written contract of carriage which gives any information regarding it. Since the shipment was damaged because of the negligence as herein set forth, the Court cannot see why the plaintiff should pay the freight upon the merchandise rendered useless by the negligence of the carrier. If the entire car had been allowed to spoil through negligence, certainly the carrier could not legally collect the freight for such damaged merchandise. For this reason the Court will allow the amount representing the freight which was paid for the transportation of the damaged fruit. The correctness of the figures was not questioned on the trial of the case.
"The labor expended in reworking the fruit was an item of damage sustained by the plaintiff. It was necessary for him to make this expenditure in order to save the merchandise, which was in good condition and was for the benefit of both plaintiff and the defendant. It resulted from the negligence as set forth in this opinion. The correctness of this amount was not questioned on the trial and the Court will allow the same.
"For these reasons, the Court renders judgment here in favor of the plaintiff as prayed for."
The judgment was signed in accordance with the above opinion and defendant has perfected an appeal therefrom to this Court.
There is no disagreement over the facts found by the lower Court, but appellant's complaint is over the application of the law to the admitted facts. Appellant's principal complaint is based upon the fact that appellee did not offer any proof to show the fruit was in good and sound condition at the time it was delivered to the carrier, and contends that the failure of appellee to make such proof bars his right to recover. The greater part of the argument and brief of counsel for appellant was and is devoted to this question, but counsel for appellee has not given it any consideration and makes no reference to this question in his brief. The law is clearly in favor of appellant's contention.
In a shipment of perishable goods, plaintiff must prove first that they were delivered to the carrier in sound condition; and second, that they were delivered to the consignee in bad condition. Plaintiff has met the second requirement, but failed to meet the first. He cannot recover without meeting both. If this were not true in law, much unsound, decaying fruit and other perishables could and possibly would be unloaded on the carriers. If the fruit in this case was unsound and in bad condition when delivered to the carrier, then delay in shipment by the carrier could not be the proximate cause of its bad condition when delivered to plaintiff. Proof of the soundness and good condition of the fruit when delivered to the carrier was absolutely essential before plaintiff could be allowed to recover from the carrier for the bad condition of the fruit when received by him.
The judgment of the lower Court is erroneous and is therefore reversed and the demands of plaintiff are rejected at his costs.