Syllabus.

# Richmond.

## The Chesapeake and Ohio Railway Company v. W. C. Crenshaw & Co., Inc.*

March 17, 1927.

1. CARRIERS—*Liability of Carrier—Carrier as Insurer—Excepted Causes.*—
   A common carrier is an insurer of goods delivered to it for transportation, against all loss resulting from its own negligence and against all other loss or damage, except such as may be caused by the act of God, the public enemy, the act of the shipper, public authority or the inherent nature of the goods. And where the damage is due to one of the five excepted causes, the carrier is liable for any damage which may be due to its failure to exercise reasonable care to protect the goods from such loss or damage.

2. CARRIERS—*Liability of Carrier—Carrier as Insurer—Injury Due to Inherent Qualities of Goods—Perishable Goods.*—Where the destruction of or injury to the goods is due to their inherent nature and qualities, or to defects therein, the carrier is not liable, if its own negligence did not occasion or contribute to the injury. With respect to perishable goods, which themselves contain the elements of destruction governing their loss or deterioration, the carrier is not an insurer, and is no more liable for destruction or injury resulting solely from the inherent infirmity in the goods than for loss entailed solely by an act of God, or of the public enemy, or by the carelessness of the shipper. Thus, the carrier is not liable for loss or injury due solely to such causes as fermentation, decay, spontaneous combustion, effervescence, putrefaction, or explosion. The measure of the carrier's duty is to exercise reasonable care and diligence to protect the goods from loss or injury while in its custody, and it is liable for only such deterioration as is attributable to its negligence.

3. CARRIERS—*Liability of Carrier—Initial and Connecting Carrier—Liability of Delivering Carrier—Presumption from Good Condition when Delivered to Initial Carrier—Case at Bar.*—The instant case was an action against a delivering carrier for loss and damage to two carloads of grapes. Having proven that the grapes were in good condition when received by the initial carrier and were in a damaged condition when delivered by the delivering carrier, the plaintiff was entitled to recover, without further evidence, unless the defendant showed that the damage was due to the inherent nature of the

*See C. & O. R. Co. v. Crenshaw & Co. 148 Va. ——, 137 S. E. 517.

grapes, since the burden is always on the carrier to show that the loss is due to an excepted cause. Being delivered to the initial carrier in a good condition, there was a presumption that they were in a good condition when received by the delivering carrier.

4. Carrier—*Liability of Carrier—Burden of Proof to Show that Loss is Due to Excepted Cause.*—In general, the burden of proof is on the carrier to show that the loss is due to an act of God, or other excepted cause, rather than fault of the carrier.

5. Carriers—*Connecting Carrier—Action Against Connecting Carrier for Damaged Condition or Deficiency in Quantity—Presumption.*—A connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers, being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession.

6. Carriers—*Initial and Connecting Carrier—Liability of Delivering Carrier—Presumption from Good Condition when Delivered to Initial Carrier—Case at Bar.*—In the instant case, an action against the carrier for loss of two carloads of grapes, the plaintiff proved the grapes were received by the initial carrier in good condition and delivered by the delivering carrier in bad condition, and relied upon the presumption of the law that the damage occurred while they were in the possession of the delivering carrier, without attempting to prove the cause of injury. Defendant undertook to rebut this presumption by proof that the cars were iced according to the provisions of the bill of lading—and that the cars moved on schedule time. Plaintiff introduced evidence to show unreasonable delay in the shipments. The jury were properly instructed as to the law and returned a verdict for the plaintiff.

*Held:* That there was sufficient evidence to support the verdict.

7. Carriers—*Instructions—Liability of Carrier as Insurer—Instructions Read Together—Case at Bar.*—In the instant case, an action against a carrier for damages to two carloads of grapes, while instructions 1 and 2, given for the plaintiff, upon the carrier's liability should have been couched in different language, yet when the instructions granted are read together, there was no merit in the contention that instructions 1 and 2 told the jury that the defendant was an absolute insurer against any change in the condition of the grapes during the course of transportation. Such is not the law, and instruction "I" informed the jury that the defendant was not liable for any damages

which might be wholly due to the inherent nature of the grapes to deteriorate and decay. As appears from instruction "I," the word "damages," as used in instructions 1 and 2 was not intended to include any changed conditions of the grapes caused by their inherent tendence to deteriorate and decay.

Error to a judgment of the Law and Equity Court of the city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Leake, Leake & Spicer* for the plaintiff in error.

*Bethel & Willams* for the defendant in error.

WEST, J., delivered the opinion of the court.

W. C. Crenshaw & Company, Incorporated, brought action against the Chesapeake and Ohio Railway Company for loss and damage to two carloads of grapes, occasioned by the alleged negligence of the defendant. To a judgment rendered in favor of the plaintiff for $401.62, with interest, this writ of error was awarded.

The grapes were shipped by S. A. Gerrard Company, Lodi, California, upon through bill of lading, to W. C. Crenshaw & Company, Incorporated, Richmond, Virginia. The bills of lading were issued by the Southern Pacific Railroad, as initial carrier, and the cars were delivered to the Chesapeake and Ohio Railway Company at Chicago, Illinois, as connecting and delivering carrier, and by it transported to Richmond, Virginia. The cars were refrigerator cars of standard type and the bill of lading called for "pre-iced car loaded. To be re-iced to full capacity at all regular icing stations."

Car P. F. E. 22928 was forwarded from Lodi on Sep-

tember 27, 1924, and was placed on the delivery track at Richmond on October 10th in the afternoon. Car P. F. E. 6639 left Lodi on October 1, 1924, and was ready for delivery at Richmond at 7 a. m. October 15th.

There were 945 crates of Tokay table grapes in each car and each crate contained four baskets of grapes. The crates and baskets were so packed in the car that, with the exception of one crate which was mashed, all of them were in place when they reached Richmond. With the exception of the one crate, there was no outward, physical damage to any of the grapes.

The United States Department of Agriculture made a report as to the quality and condition of the grapes in car 6639 the day they were loaded at Lodi as follows: "Grapes well matured; sugar test minimum, 19.0 per cent; average, 21.8 per cent. All fresh and firm, uniformly well colored. Stems fresh; berries firmly attached. Two to three per cent defects, mostly scarred, sunburned or shattering."

Bert Lee, who, at the request of the plaintiff, inspected the grapes in the same car upon its arrival in Richmond, reported as follows: "Quality and grading fair to good; medium to large clusters, some small; berries generally medium to large size; twenty-five per cent of crates inspected show berries small size, ripe condition; stems green to some dry and show slight stem mould and three to five per cent decay; ten per cent of crates nesty and grapes shatter; pack good; color fair to good."

N. E. Hanson also made an inspection at the instance of the plaintiff upon arrival of the same car at Richmond and reported: "No bad orders noted. Bracing intact. American Beauty Brand. Grapes of fair quality. Very small to large size clusters; general run small to medium. Small to medium berries. Some

crates run large. Seventy to eighty per cent dried and partly dried stems, balance fairly green. Berries do not shatter easily. Show two per cent blue mould decay of berries. Four per cent show slight mists of grey mould."

The report of the Department of Agriculture on grapes in car 22928, made at Lodi on date of shipment, reads: "Grapes well matured; sugar test minimum, 15.5 per cent; average, 21.3 per cent. Fresh and firm. Lot 31 (183 crates) and lot 39 (111 crates) fair to well colored, balance of load well colored. Stems fresh, berries firmly attached. Three to four per cent sun-burned, shot-berries or split."

Inspector Bert Lee inspected this car when it arrived at Richmond and found the following: "Quality and grading fair to good; medium to large size clusters, fairly compact; medium to large berries, some small; ripe condition, stems generally green; some dry, show-ing slight stem mould and three to five per cent decay to some crates, and grapes nesty and grapes shatter; pack good; color good."

Inspector N. E. Hanson also inspected this car upon arrival at Richmond, and reported: "No bad orders noted. American Beauty Brand. Grapes of fair to good quality. Fair pack. General run good quality. Some pale. Small to very large size clusters; general run of medium size. Some crates run small berries; general run of medium to large size. Shows an occa-sional blue mould decay not to exceed two per cent. Some slight dried stems and show five per cent slight covered with gray mould."

C. C. Pearman, vice president of the plaintiff cor-poration, who personally received the grapes for the con-signee, testified that the grapes "were mouldy and

nesty.   I mean by nesty the grapes were decayed and formed a regular nest in some of the crates—shattery—pick up bunch and the grapes would drop off.''

Pearman tesified further that the grapes had to be sold at $1.50 per crate when the market value of the same grapes, received in first class order, was $2.00 to $2.25 a crate; that one car cost $1,744.01 and sold on the market for $1,416.00, and the other car cost $1,744.06 and sold on the market for $1,184.25; that his corporation has purchased many cars of grapes which were shipped from Lodi to Richmond and received without damage; and that the only thing which will lessen the tendency of grapes to deteriorate is to keep the cars properly refrigerated.

There is nothing in the record to show what happened before the cars reached Chicago.

According to the defendant's evidence, from the time the cars were received by the Chesapeake and Ohio Railway until they arrived at Richmond the icing was done as required by the contract.

There is evidence tending to show that ten days is the usual time for a car of fruit to come from California to Richmond, that thirteen days would be regarded as a delayed shipment; and that grapes shipped in good condition, properly handled in transit and moved on schedule time, arrive in Richmond "without decay or shatter from inherent causes."

The plaintiff in error relies upon three assignments of error as follows:

"1. The court erred in giving instructions 1 and 2, as asked for by the plaintiff, or either one of them.

"2. The court erred in not giving instructions 'B' and 'D', asked for by the defendant; in not giving the alternative instruction 'C', asked for by the defendant, and in modifying instruction 'I,' asked for by the defendant, and giving said instruction as modified.

"3. The court erred in not setting aside the verdict of the jury and awarding the defendant a new trial."

In disposing of these assignments we shall consider the nature and extent of defendant's liability for damage to goods in transit, the presumption of negligence, and the burden of proof.

[1] A common carrier is an insurer of goods delivered to it for transportation, against all loss resulting from its own negligence and against all other loss or damage, except such as may be caused by the act of God, the public enemy, the act of the shipper, public authority, or the inherent nature of the goods. And where the damage is due to one of the five excepted causes, the carrier is liable for any damage which may be due to its failure to exercise reasonable care to protect the goods from such loss or damage. Dobie on Bailments and Carriers, page 324.

[2] In Corpus Juris, section 148, pages 121, 122, we find this: "Where the destruction of or injury to the goods is due to their inherent nature and qualities, or to defects therein, the carrier is not liable, if its own negligence did not occasion or contribute to the injury. With respect to perishable goods, which themselves contain the elements of destruction governing their loss or deterioration, the carrier is not an insurer, and is no more liable for destruction or injury resulting solely from the inherent infirmity in the goods than for loss entailed solely by an act of God, or of the public enemy, or by the carelessness of the shipper. Thus, the carrier is not liable for loss or injury due solely to such causes as fermentation, decay, spontaneous combustion, effervescence, putrefaction, or explosion. The measure of the carrier's duty is to exercise reasonable care and diligence to protect the goods from loss or injury while in its custody, and it is liable for only such deterioration as is attributable to its negligence."

In 1 Hutchinson on Carriers (3d ed.), section 334, this is said: "So obviously the carrier, if not himself at fault, cannot be held liable for losses which have been caused by the inherent nature, vice, defect, or infirmity of the goods themselves, as in the case of decay, waste, or deterioration of perishable fruits, the evaporation of liquids, the bursting of vessels owing to the fermentation of their contents, the natural death of an animal, the vicious or uncontrollable nature of live stock, and the like."

The case of *Philadelphia B. & W. R. Co.* v. *Diffendal,* 109 Md. 494, 72 Atl. 193, involved the shipment of a carload of peaches. The court states the law thus: "The ordinary common law liability of a common carrier as to most commodities committed to its custody for transportation is that of an insurer against all risks incident to the transportation, save such as result from an act of God, or the public enemy, or the fault of the shipper; but with respect to perishable goods which themselves contain the elements of destruction occasioning their own loss or deterioration, the carrier is not an insurer, but is required to exercise reasonable care and diligence to protect the goods from injury while in its custody as well as to deliver them with dispatch to the consignee or connecting carrier."

[3] Having proven that the grapes were in good condition when received by the initial carrier at Lodi and were in a damaged condition when delivered by the delivering carrier at Richmond, the plaintiff was entitled to recover, without further evidence, unless the defendant showed that the damage was due to the inherent nature of the grapes, since the burden is always on the carrier to show that the loss is due to an excepted cause. Being delivered to the initial carrier in a good condition, there was a presumption that they were in a good condition when received by the delivering carrier.

[4] In 6 Cyc. 382, the law is stated thus: "In general, the burden of proof is on the carrier to show that the loss is due to an act of God, or other excepted cause, rather than fault of the carrier."

In Michie on Carriers, vol. 1, section 1057, the author says: "The common carrier has the burden of showing that the loss or damage resulted from some cause for which it was not responsible."

In *Central Georgia Railroad & Banking Co.* v. *Stewart*, 91 Ga. 382, 17 S. E. 838, 4 Am. St. Rep. 37, involving damage to a shipment of fruit, the court said: "When goods are damaged in the hands of the carrier, the burden of proof is upon it to show that it was free from negligence, or that, notwithstanding its negligence, the damage occurred without its fault; that is, that its negligence did not contribute to the damage; and no exception to the rule arises from the fact that the goods are perishable or liable to deteriorate rapidly from internal causes."

In *Southern Railway Co.* v. *Finley & Seymour*, 127 Va. 229, 102 S. E. 559, which involved damages to a shipment of mules, Judge Prentis, speaking for the court, stated the rule thus: "There is much discussion in the briefs as to whether the burden of proof as to the cause of the damage was upon the plaintiffs or the company. In our view, the weight of authority is that such burden is upon the company."

In *Southern Railway Co.* v. *Russell*, 133 Va. 292, 112 S. E. 700, which involved an interstate shipment of watermelons from Georgia to Richmond, Virginia, the melons were received in good order and delivered in bad order. Judge Burks, in delivering the opinion of the court, said: "In order to recover it was necessary for the plaintiff to show, either directly or indirectly, that they were received in good condition. This he under-

took to do by showing that they were delivered to the initial carrier in good condition. If they were so delivered, there was a presumption that they were in like good condition when received by the delivering carrier, and it was liable, notwithstanding the provisions of the Carmack amendment to the interstate commerce act (U. S. Comp. St., section 8604a, 8604aa)."

[5] Further in the opinion, Judge Burks quotes with approval from that portion of the opinion of the court in *Chicago & Northwestern Ry. Co.* v. *Whitnack Produce Co.*, 258 U. S. 369, 66 L. Ed. 665, 42 Sup. Ct. 328, which declares the law to be as stated in section 1348, Hutchinson on Carriers (3d ed.), as follows:

"A connecting carrier, who has completed the transportation and delivered the goods to the consignee in a damaged condition or deficient in quantity, will be held liable in an action for the damage or deficiency, without proof that it was occasioned by his fault, unless he can show that he received them in the condition in which he delivered them. The condition and quantity of the goods when they were delivered to the first of the connecting carriers being shown, the presumption will arise that they continued in that condition down to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the injury or loss occurred while they were in his possession."

[6] The plaintiff proved the grapes were received by the initial carrier in good condition and delivered by the delivering carrier in bad condition, and relied upon the presumption of law that the damage occurred while they were in the possession of the delivering carrier, without attempting to prove the cause of injury.

The defendant undertook to rebut this presumption by showing that the cars were iced according to the

provisions of the bill of lading at each icing station on its line, and that the cars moved on schedule time. Plaintiff also introduced evidence to show that thirteen or fourteen days for a shipment to move from Lodi to Richmond would be considered an unreasonably delayed shipment; that plaintiff had many times received shipments of grapes at Richmond from California, in ten days, and that they arrived in good condition.

Instructions Nos. 1 and 2, given at the request of the plaintiff, read as follows:

1. "The court instructs the jury that if you believe from the evidence that the grapes in question were delivered at Lodi, California, to the Southern Pacific Railway Company in good condition and that the grapes were transported to Chicago, Ill., and there delivered to the Chesapeake and Ohio Railway Company, and that the Chesapeake and Ohio Railway Company transported the goods to Richmond, Virginia, and there offered them for delivery to W. C. Crenshaw and Company, Incorporated, in a damaged condition, then there is a *prima facie* presumption of law that the damage accrued to the grapes while they were in the hands of the Chesapeake and Ohio Railway Company, and the court further tells the jury that the burden of proof is upon the said Chesapeake and Ohio Railway Company to show that said damage did not accrue to the grapes while in its possession, and if you further believe from the evidence that the said Chesapeake and Ohio Railway Company has not sustained this burden of proof, you must find your verdict for the plaintiff."

2. "The court instructs the jury that a connecting carrier, which has completed the transportation and delivered goods to a consignee in a damaged condition, must be held liable in an action for the damage to the goods without proof that it was occasioned by his

fault, unless he shows that he received them in the condition in which he delivered them. The condition of the goods when they were delivered to the first of the connecting carriers being shown, a presumption of law arises that they continued in that condition to the time of their delivery to the carrier completing the transportation and making the delivery to the consignee, and that the damage occurred while the goods were in his possession."

The court also gave instructions "A," "E," "G," and "H," on motion of the defendant, and "I" as amended, of its own motion, as follows:

"A" "The court instructs the jury that the defendant, as delivering or terminal carrier, is not liable for any injuries to the grapes resulting from any negligence of its preceding carriers, if any such there was, or from any causes existent therein prior to its receiving them, even though such causes may not have become active until after the grapes were in the custody of the defendant. And the court further instructs the jury that although there is a presumption, arising upon satisfactory proof of delivery of goods to the first or initial carrier in good condition and their arrival at destination in a damaged condition, that the injuries occurred while in the custody of the delivering or terminal carrier, this presumption may be rebutted and shown to be untrue. And if the jury believe from the evidence and circumstances of the case that the defendant has rebutted this presumption, they shall find for the defendant."

"E" "The court instructs the jury that the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the grapes delivered for transportation at Lodi, California, were in good condition at the time of such delivery, and if you believe

from the evidence that the plaintiff has failed to show this by a preponderance of the evidence and for that reason the grapes reached the plaintiff at Richmond in a damaged state, you shall find for the defendant."

"G" "The court instructs the jury that if you believe from the evidence that the two shipments were delivered to the defendant by its connecting carrier in refrigerator cars with bill of lading instructions calling for re-icing to capacity at all regular re-icing stations, and said cars were delivered to each re-icing station and at destination with bunkers at least three-fourths full of ice, and were re-iced to capacity at each regular re-icing station en route, you shall find for the defendant unless you believe the defendant liable in some way under the other instructions of the court."

"H" "The court instructs the jury that common carriers are not insurers against delay in the delivery of goods, but are only required to exercise reasonable diligence and care to avoid delay."

"I" (As modified and given.) "The court instructs the jury that the defendant is not liable for any damages which may be wholly due to the inherent nature of the grapes to deteriorate and decay, and if the jury believe from the evidence and circumstances of the case that the damages, if any there were, were occasioned wholly by this inherent nature of the grapes to deteriorate and decay they shall find for the defendant; and if the defendant relies upon such defense, then it has the burden of establishing it to the satisfaction of the jury."

A painstaking examination of all the instructions granted and refused fails to disclose any reversible error in the action of the court in giving or refusing instructions. The instructions granted presented to the jury sufficiently the plaintiff's and the defendant's theories of the case.

[7] While instructions 1 and 2 should have been couched in different language, yet when all the instructions are read together, as they should be, there is no merit in the contention that these two instructions told the jury that the defendant was an absolute insurer against *any change* in the condition of the grapes during transportation. Such is not the law; and instruction "I," as modified, informed the jury that the defendant was not liable for any damages which might be wholly due to the inherent nature of the grapes to deteriorate and decay. As appears from instruction "I," the word "damages," as used in instructions 1 and 2, was not intended to include any changed condition of the grapes wholly due to inherent deterioration. The first and second assignments of error are, therefore, without merit.

There being no prejudicial error in the instructions, and the jury having heard all the evidence and returned a verdict for the plaintiff for about one-half of the amount of damage claimed by it, we cannot say the verdict is contrary to the evidence, or without evidence to support it.

The judgment will be affirmed.

*Affirmed.*