# Richmond.

## SOUTHERN RAILWAY COMPANY V. BURTON & BRIEL, INC.

### January 19, 1928.

### Absent, Burks and Campbell, JJ.

1. CARRIERS OF GOODS—*Ventilation—Evidence of Want of Ventilation Unsatisfactory and Confusing—Case at Bar.*—The instant case was an action against carrier for damage to a carload of apples. The car, under the bill of lading, was entitled to standard ventilation. While in the yards after it had been discovered that some of the crates had been robbed, some of the vents of the car were closed for a few days. It was claimed by plaintiff that other apples in the car might have suffered because the ripening of the apples might have been accelerated. The apples were intended for cold storage to be disposed of in the spring. A witness for plaintiff testified that the apples "seemed to be too ripe for storage," but the apples were stored and came out of storage in the spring in good condition.

   *Held:* That the evidence showed no damage upon which a verdict for plaintiff could be based because the apples did not have standard ventilation during the short period referred to.

2. CARRIERS OF GOODS—*Shipment of Apples—Evidence of Damage to the Apples Not Sufficient to Support a Verdict.*—The instant case was an action against a carrier of goods for damages to a carload of apples. Fourteen boxes of the apples were damaged by buckling and five were pilfered. The carrier conceded that the stolen and damaged apples had the value claimed by the plaintiff but contended that in no event should the recovery exceed that sum. A witness for plaintiff testified to the effect that the apples were bruised. As to the apples which were in the crates affected by the buckling, that was true, but there was no evidence that any other of the crates were so injured. The witness testified that the fruit was bruised without specifying or estimating the proportion so damaged.

   *Held:* That this evidence was insufficient and too vague to support a verdict for plaintiff.

3. CARRIERS OF GOODS—*Damages—Burden of Proof.*—The burden of proof

is always upon the plaintiff claiming damages to show the amount with reasonable certainty.

4. Appeal and Error—*New Trial—Weight of Verdict.*—The Supreme Court of Appeals has gone far in enforcing the verdicts of juries; but there is a limit beyond which it should not go.

Error to a judgment of the Law and Equity Court of the city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for. plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Thomas B. Gay* and *Wirt P. Marks, Jr.,* for the plaintiff in error.

*Thomas A. Williams* and *L. C. O'Connor,* for the defendant in error.

Prentis, P., delivered the opinion of the court.

Burton & Briel, Incorporated, have recovered a judgment for $400.00 against the Southern Railway Company upon a claim of damage to a carload of apples, shipped to them from Watsonville, California, for sale on commission. Upon the first trial of the case the jury failed to agree and were discharged, but upon the second trial there was a verdict for the plaintiff, which the trial court refused to set aside.

A number of errors of law in the granting of instructions are assigned by the railway company, but we think the questions so raised have been so recently decided adversely to the contentions of the company that nothing further need now be said with reference thereto. *C. & O. Ry. Co.* v. *Crenshaw & Co.,* 147 Va. 290, 137 S. E. 515; *C. & O. Ry. Co.* v. *Timberlake,*

*Currie & Co.*, 147 Va. 304, 137 S. E. 507; *C. & O. Ry. Co.* v. *Crenshaw & Co.*, 148 Va. 48, 138 S. E. 467.

The other assignment of error is that the verdict is unsupported by the evidence and contrary to the evidence.

It is clearly shown that when delivery was made upon the through bill of lading to the plaintiff at Richmond fourteen crates of the apples had been damaged by the crates having been broken when the load buckled, and the apples therein had been bruised, and that five other crates had been robbed. It is conceded for the carrier that the stolen and damaged crates had a value, according to the evidence of the plaintiff, of $47.50, but contended that in no event should the recovery exceed this sum.

The evidence of the plaintiff relied on to support any larger amount is certainly most vague, unsatisfactory and confusing.

1. Much of it relates to the fact that the car, under the bill of lading, was entitled to standard ventilation, whereas for a few days in the yard at Richmond, after it had been discovered that some of the crates had been robbed, some of the vents in the car were closed. Based upon this circumstance, there is much opinion evidence as to the general effect of closing such vents, and the consequential damage which might have been suffered because the ripening of the apples might have been thereby accelerated. They were intended to be put in cold storage, to be finally disposed of the following spring, and hence this ripening, if too rapid, would reduce their value. Upon this point, however, while the plaintiff's chief witness, Burton, testified that the apples "seemed to be too ripe for storage," the fact is that they were stored and that they came out of storage in the following spring

(1924) in good condition, in fact in such good condition that 515 boxes were shipped to New York for export. The fruit inspector, Hanson, employed and paid by the plaintiff, who inspected them both before and after storage, testified that "the condition of the apples was all right when they came out of storage, just as any other apples would come out in the spring, showing an occasional slight scald or spot rot;" and again, that they were "in the average condition of any commodity that comes out of storage in the spring;" and again, with reference to the scald or decay to which he had alluded, he said: "Yes; you cannot throw it out of grade unless the percentage of scald or decay is such. If the percentage of scald does not exceed ten per cent, or where the decay does not exceed two per cent, the fruit could not be thrown out of grade; it would still be in grade."

It was shown that the market for apples in the spring of 1924 was depressed. They were, nevertheless, sold, as shown by the account of sale rendered to the California shippers, April 30, 1924—fifty-seven boxes at $2.00; 249 boxes at $1.60, and 534 boxes, which seem to include the nineteen boxes which had been robbed and broken, at $1.87 per box, from which an allowance of twenty-five cents per box upon the entire quantity was deducted.

These are the questions propounded to the same witness, Hanson, inspector, and his answers, in comparing the government inspection report at the time of the shipment from California, with his own inspection at the time of delivery in Richmond:

"Q. Here is the government inspection report, which is plaintiff's Exhibit No. 4 in this case, and says: 'The apples are of fine quality, in hard condition and practically free from defects affecting grade. Apples

are from green to yellowish green color, and fancy grade.' Is there any difference in the condition of those apples as shown by this government report and their condition as shown. by your report, disregarding, of course, the fourteen crates which .were damaged and the five which were pilfered? Just explain what difference there was, if any. State first if there was any difference, and, if so, what it was?

"A. There is not very much difference in either inspection that I can find.

"Q. And in your opinion these 821 boxes—being the number remaining after eliminating the fourteen boxes which were damaged by buckling and the five which were pilfered—were in good condition for sale or storage, at the time you made your inspection as shown by your report?

"A. Yes, sir."

The same inspector, his attention having been called to the temperatures during the few days in October, 1923, while some of the vents in the car were closed, testified that those temperatures would not affect the commodity so that it could be detected by any fruit inspector, and that he could not see any material damage there, with those temperatures—that apples would not damage with those temperatures.

[1] There is no contradiction of any of the evidence which we have just recited, and it shows that there was no damage upon which a verdict could be based because the apples did not have standard ventilation during the short period referred to.

[2] (2). The only other ground upon which the recovery could be based is the statement of the plaintiff's witness, Burton, to the effect that the apples were bruised. As to the apples which were in the crates affected by the buckling, this is true, but there is no

evidence that any other of the crates, except the four-teen to which we have referred, were so injured. He testified that he examined about twenty-five crates. His own inspector discovered no such injury to the apples. Conceding the truth of his evidence, and giving the extreme effect to it, it falls far short of supporting the verdict. He testifies that the fruit was bruised, without specifying or estimating the propor-tion so damaged. Whether he meant to limit this damage from bruising to the fruit in the fourteen boxes of fruit which had buckled, or to the not ex-ceeding twenty-five crates which he examined, is immaterial. It is certainly insufficient and too vague to support the verdict for $400.00. Essential facts are lacking.

The case has this peculiar feature, which is unex-plained: The plaintiff was handling the apples on commission for the California shippers. He testified that he sold them shortly after arrival on October 20, 1923, as damaged, for $1.50 a box to the Atlantic Fruit Company, of Miami, Florida, and that he then stored them in the name of the plaintiff, Burton & Briel, Incorporated, but for the vendee, and in the following spring took them out of storage from time to time upon the orders of the Atlantic Fruit Company, vendee. We nevertheless find the plaintiff rendering an account, April 30, 1924, to its principal, MacDonald & Sons, Watsonville, California, for the apples so with-drawn from cold storage in the spring of 1924, six months after the sale to the Atlantic Fruit Company, and the dates and quantities on this account correspond precisely with the items shown on the account of the cold storage company as to the several withdrawals of the apples from cold storage. The plaintiff's account also charges the California shippers with the storage

charges of the cold storage company. Now, of course, it is possible that all of this confusion and inconsistency might have been explained. It is certainly true, however, that it is unexplained.

[3, 4] The courts have gone far, and we believe none further than this court, in enforcing the verdicts of juries; but there is a limit beyond which we should not go. That limit has been reached in this case. The burden is always upon the plaintiff claiming damages to show the amount with reasonable certainty. Here the jury have only been given vague suggestions and surmises as to possible damages from bruising which the plaintiff ought and could have shown more definitely if they existed. The representative of the Atlantic Fruit Company, who bought the apples originally, and for whose benefit they were stored until the following spring, should have been able to supply evidence which would have been helpful. The underlying and uncontradicted facts are that the apples were placed in cold storage in accordance with the original plan; that they remained in cold storage until the following spring; that they were shipped out to other purchasers; and that when shipped out to such new purchasers they were in good condition; and if they were substantially damaged—that is, if other boxes which were not examined were damaged by bruising—it cannot be doubted that testimony to establish that fact could and should have been produced.

The verdict is unsupported by and against the evidence and will be set aside. This court will enter the judgment which the trial court should have entered— that is, for the sum of $47.50, with interest from October 20, 1923, and costs will be awarded to the plaintiff in error as the party substantially prevailing here.

*Reversed.*