GEORGE W. STONE

*v.*

ERNEST H. GILBERT, SR., TRUSTEE, *et al.*, PARTNERS, ETC.

(No. 10095)

Submitted September 27, 1949. Decided November 8, 1949.

LOVINS, JUDGE, not participating.

FOX, JUDGE, concurring.

*Ernest H. Gilbert, Jr., Jesse M. Jaco, Milford L. Gibson,* for appellants.

No appearance in person or by counsel for appellee.

RILEY, JUDGE:

George W. Stone brought this suit in equity in the Circuit Court of Preston County against Ernest H. Gilbert, Sr., Trustee, Ernest H. Gilbert, Jr., and Eleanor M. Gilbert, partners trading and doing business as Gilbert Trust Coal Company, to enjoin the defendants from continuing certain strip mining operations on land owned by him in a manner allegedly in violation of law and of the terms of two certain contracts, dated January 29, 1947, between the plaintiff, George W. Stone, as party of the first part, and the defendant, Ernest H. Gilbert, Sr., Trustee, as party of the second part, and to recover a decretal judgment for alleged trespasses and damages to plaintiff's land, and conversions of materials extracted from the surface thereof.

The trial chancellor by an interlocutory decree awarded an injunction to the plaintiff, enjoining the defendants from "destroying timber, * * * [and] removing soil from the premises", conditioned upon a bond of twenty-five thousand dollars, which was never furnished by the plaintiff. The case was heard upon defendants' answer, denying all the material allegations upon which the injunction

was issued, such as insolvency and irreparable trespasses, set forth in plaintiff's original and amended bills of complaint, and praying that the injunction be denied; and upon evidence taken in open court.

The court filed a written opinion contained in a letter dated April 22, 1948, in which he found "for the plaintiff as to certain rocks, stone and soil removed from his premises by the defendant, assesses his damages at $150.00, and awards him costs against the defendants"; and for the defendants as to all other matters in controversy in the suit. On the basis of this finding a decretal judgment was entered in favor of plaintiff and against defendants in the amount of one hundred fifty dollars, from which the defendants prosecute this appeal.

On April 23, 1942, the defendant, Ernest H. Gilbert, Sr., Trustee, acting for himself and the other defendants, acquired the Bakerstown coal underlying a tract of land of approximately twelve acres in Valley District, Preston County, by a deed which reserved two separate tracts of one acre each to Edwin V. Menear and G. A. Reed, respectively. On January 27, 1947, Ernest H. Gilbert, Sr., Trustee, acquired the one-acre tract reserved to Edwin V. Menear, and at the same time was in process of negotiating for the purchase of the one-acre Reed reservation, which subsequently resulted in the acquisition thereof on March 12, 1947.

It appears from the record that under a decree of sale entered by the Circuit Court of Preston County on December 20, 1946, in a suit therein pending in which Walter Duff, administrator, was plaintiff, and Albert Duff and others were defendants, the plaintiff, George W. Stone, purchased for $5,615.00 from the special commissioners appointed in said decree, two adjoining farms in Valley District, Preston County, containing two hundred sixty-five acres, more or less. The lands so purchased included the surface overlying the twelve-acre tract of Bakerstown coal owned by the defendants, which coal was expressly excepted from the terms of the judicial sale.

Pending the confirmation of the special commissioners' sale to plaintiff, George W. Stone, which confirmation was made on March 11, 1947, and the delivery of a deed conveying the tract of land to Stone in pursuance thereof, Stone entered into two concomitant agreements, dated January 29, 1947, with the defendant, Ernest H. Gilbert, Sr., Trustee. By the first agreement Stone gave to Gilbert, Trustee, the privilege of entering on the surface of the land and recovering the Bakerstown coal by strip mining methods, in consideration of Gilbert paying to plaintiff three thousand dollars, fifteen hundred dollars in cash, and the balance on the basis of ten cents a ton royalty on coal extracted. The second agreement recited the circumstances of the judicial sale, and granted to Gilbert, Trustee, his agents and employees, the right "to immediately enter upon and take possession of so much of the surface of the aforesaid real estate immediately overlying and adjacent to the Gilbert coal". This latter agreement further provides that, upon the confirmation of the sale of the real estate to the plaintiff, George W. Stone, and the conveyance to him by a special commissioner of the land, the said George W. Stone will execute a written lease upon the following terms and conditions:

> "Operator shall have the right to enter in, upon and over the said parcel of real estate hereinbefore described and the right to 'strip' the surface or the strata overlying all of said coal, and such additional surface as may be necessary or convenient for such 'stripping' operations, and, in general, to do any and all acts which are necessary or convenient for the mining and removal of all said coal; and by way of enlargement and not by way of restriction of the aforesaid rights and privileges the further right to mine, remove and market all of the said coal, and the free and uninterrupted right of way into, upon, over and under said land at such points and in such manner, for such ways, tracks and roads as may be necessary and proper for the purpose of digging, excavating, mining, draining, preparing, marketing and carrying away said coal, without any liability whatsoever from damage that may arise from the removal of any or all of said coal, or the

surface or sub-surface or other strata overlying the same, or such additional parts of said surface as may be necessary or convenient in connection therewith, and without being liable for any injury to the same, or anything therein or thereon, or to the springs or water courses thereof."

The written lease was never executed, but pursuant to the agreements of January 29, 1947, the defendants went on the surface of plaintiff's land overlying their coal, and proceeded by strip mining methods to remove, and did remove, all of their coal. Before doing so, however, defendants paid to plaintiff the fifteen hundred dollar cash payment required, and during the course of mining the balance of fifteen hundred dollars was paid by way of royalties, as provided in the agreements. This record discloses that defendants' tipple, to which coal was transported in motor trucks and loaded in railway cars for shipment, was located off the surface of the land owned by plaintiff. During the course of the mining of defendants' coal under the Stone land, the defendants constructed a roadway or ramp leading to their tipple or platform, from which the coal was dumped into railway cars. In order to construct such roadway, or ramp, the defendant during the course of two days loaded approximately fifty tons, or ten truck loads, of material from plaintiff's surface and transported the same to the tipple.

The defendants contend that this material consisted of rocks, shale and bone coal, suitable for building a road to support heavy trucks. The defendant, Ernest H. Gilbert, Sr., testified that no top soil was removed, and, without contradiction, he further testified that it was convenient and necessary in the course of strip mining to use rocks, shale and bone coal for the construction of roads necessary in connection with the strip mining operations; and that, because of their hardness, such materials are suitable for building roadways for heavy trucks; and that it was customary for strip mining operators to take such material from the surface of the land. On the other hand, however, plaintiff testified that some soil and trees were removed.

It is on the basis of Stone's testimony that the circuit

court entered the decretal judgment against defendants in the amount of one hundred fifty dollars. The court's finding that plaintiff suffered one hundred fifty dollars damage is on this record based solely on plaintiff's testimony, which, in our opinion, is indefinite. In answer to the inquiry whether he could tell the court the value of the dirt, bone coal and slate removed from his property, he testified, "I don't know whether I could or not." He further testified that the material removed consisted of top soil, clay and strata but how much top soil the witness did not say. When asked how much or how badly the removal damaged the farm, the witness answered, "Maybe, $150.00"; and when asked how he arrived at that figure, he said, "Well, if you haul the soil off the place it shows that much more valueless, isn't it?". When asked whether that is the only answer he had to make, he responded, "Well, it just makes a damage of $150.00.".

So on this record there are two questions before us: (1) The legal question whether the mining rights are sufficiently broad to justify defendants in removing the materials for the purpose of constructing the roadway or ramp; and (2) the factual question whether Stone's evidence, if credible, is sufficiently definite to merit a monetary recovery.

Though the mining lease contemplated by the second agreement of January 29, 1947, was never executed and delivered by plaintiff to the defendants, we think that the fact that the defendants entered upon the premises and completely strip mined their coal underlying plaintiff's land with the tacit permission of plaintiff, this case should be appraised as though the lease had been executed and delivered, and the agreements of January 29, 1947, stand in this record in lieu of the lease.

So, initially, we have the question whether the mining rights contained in the second agreement are sufficiently broad that defendants had the right to enter on plaintiff's property and remove the materials from the surface thereof for the purpose of constructing the road or ramp to their tipple, which was outside the land embraced in

the two agreements. In this connection it is important to note that Ernest H. Gilbert, Sr., who had been engaged in the strip mining business since about 1918, testified, without contradiction, that no top soil was removed from the premises in the course of defendant's strip mining; that it is customary to use shale, rock and bone coal, which the defendants admit they did use, in the construction of roads and ramps; that this latter material being of hard consistency is well adapted to the construction of roads and ramps; and that in the instant case the road and ramp constructed from the fifty tons of materials removed was not only convenient, but necessary for the stripping operation. While we think the mining clause provisions are unambiguous in the sense that the provisions were clearly designed by the parties to give full freedom to defendants to do whatever was necessary and convenient for the stripping operations, the testimony of Gilbert is important on the factual situation as to what is necessary and convenient in the circumstances portrayed by this record.

In construing the pertinent language of the second agreement to determine whether defendants had the right to remove the materials which they actually removed for the purpose of constructing the road or ramp to their tipple, we note that plaintiff paid only $5,615.00 for the boundary of two hundred sixty-five acres, more or less, of land purchased at a judicial sale, while the defendants paid for the use of the surface only overlying their coal the sum of three thousand dollars. Evidently this payment was the consideration for the very broad mining rights contained in the second agreement. The agreement provided for the right of removal of *all* of the coal, and for that purpose the agreement gives to defendants "the right to 'strip' the surface or the strata overlying all of said coal, and such additional surface as may be necessary or convenient for such 'stripping' operations, and, in general, to do any and all acts which are necessary or convenient for the mining and removal of all said coal." The agreement further provides "By way of enlargement and not by way of restriction of the aforesaid rights and privileges * * *" that defendants shall have the right of ingress

into, upon, and over the lands for the purpose of removing the coal, "without any liability whatsoever from damage that may arise from the removal of any or all of said coal, or the surface or sub-surface or other strata overlying the same, or such additional parts of said surface as may be necessary or convenient in connection therewith, and without being liable for any injury to the same, or anything therein or thereon, or to the springs or water courses thereof."

In addition the second agreement provides that in the event plaintiff shall not exercise his right to remove the timber standing on the surface, the operator, Ernest H. Gilbert, Sr., shall not be liable for damage or destruction thereof occurring in the course of his mining operations.

It is quite difficult to conceive of any mining rights of greater breadth than those under consideration. Indeed the instant provisions are such that, in our opinion, it is the evident intent of the parties that defendants by the payment of three thousand dollars, a comparatively high price for the use of the surface overlying defendants' coal, bargained for the full and unbridled use of the surface, except for wilful and unnecessary waste during the course of and for the purpose of conducting their strip mining operations. In *Comley* v. *Ford,* 65 W. Va. 429, pt. 1, syl., this Court held: "An instrument, granting the right to mine and remove the coal in a tract of land for a period of years, and 'to take all of the necessary, usual or convenient means for working and taking away the said coal,' creates an estate for years in the land." So, in the instant case where the agreement provides for the taking of all the coal from beneath plaintiff's land and not for a period of years, we think the instant agreement has given to plaintiff full use of the surface of the land to such extent as may be· necessary and convenient to the mining of defendants' coal by strip mining methods, if not an estate in the land itself. In *Preston County Coke Co.* v. *Elkins Coal & Coke Co.,* 82 W. Va. 590, 96 S. E. 973, this Court, construing a covenant in a deed granting mining rights, which absolves the grantee from liability for damage to

springs on the surface or the destruction thereof, as incidental to the removal of the coal, said the language "justifies such injury or destruction at such time as the mine owner may see fit to take out the coal, and injury to a spring constitutes no ground for restraint of the mining operations."

Under these authorities, and taking into consideration the breadth of the mining rights under appraisement, and the evident intent of the owner to forego any rights to the surface overlying defendants' coal, with no liability on the defendants therefor in case of the owner's failure to remove trees on the land, and that, in view of the showing in this record, that the materials removed by defendants for the purpose of constructing the road or ramp were necessary and convenient to defendants' strip mining operations, the defendants were within their rights under the second agreement of January 29, 1947, in affecting such removal, and are under no liability to the plaintiff, either by restraint or by monetary exaction by way of a decretal judgment, for such removal.

While the foregoing disposes of the single basic question before us, we say further that plaintiff's evidence as to damages is insufficient and too indefinite to support any decretal judgment. Though, as this record discloses, fifty tons of materials were removed from the surface for the purpose of constructing the road or ramp, no evidence was adduced by plaintiff as to the tonnage value of such materials, and he should be held to his statement, "I don't know whether I could or not" tell the court the value of the dirt, bone coal and slate removed from the property. In *Southern Railway Co. v. Burton & Briel*, 149 Va. 364, 141 S. E. 113, it was held that the burden of proof is always upon the plaintiff claiming damages to show the amount with reasonable certainty. In *Newman v. Robson & Prichard*, 86 W. Va. 681, pt. 3, syl., 104 S. E. 127, a case to recover damages for the alleged wrongful and malicious issuing of two distress warrants, this Court held, "To justify recovery of any damages some data from which the actual loss sustained can be determined must be sub-

mitted to the jury, else the jury will not be warranted in finding such damages in favor of plaintiff, * * *." See also *Tingler* v. *Lahti*, 87 W. Va. 499, 105 S. E. 810.

For the foregoing reasons we reverse the decree of the Circuit Court of Preston County, and remand this cause to that court with directions that plaintiff's bills of complaint be dismissed at plaintiff's cost.

*Reversed and remanded*
*with directions.*

Fox, Judge, concurring:

I concur in the reversal of the decree of the Circuit Court of Preston County in this case, but not on the grounds stated in the syllabus, and principally relied upon in the opinion filed by Judge Riley. The mining rights referred to in the opinion are broad, and, in the circumstances of this case, call for a liberal application in the lessee's favor of the privileges conveyed thereby; but, with all this, I do not think they cover the right to take rock, shale and soil from the leased premises and use the same in constructing a fill or road on the premises of another. In my opinion, the mining rights granted were intended to be exercised only on the leased premises. I think rock, shale and soil could have been mined from the leased premises and used to construct fills and roads on said premises, where necessary to mine and market the underlying coal; but I would go no further. In the present instance, only a small amount of earth material was removed from the leased premises; but the principle announced does not make the amount of material used the test. Evidently the test is whether the material can be reasonably used either on or off the premises to serve the purpose for which the premises were leased. This being true, the opinion filed would permit the removal of all available earth material from the leased premises, whatever the result and damage might be, if reasonably necessary to the marketing of the coal. Also, in this case, the earth material was small in amount, and probably transported but a short distance from the leased premises; but

on the principle herein announced, I do not see how a line can be drawn between fifty tons removed for a short distance only, and five hundred tons removed for five miles or more, provided the removal is necessary to effect the paramount purpose for which the lease was executed.

I would reverse the decree of the trial court on two grounds. First, no damages were shown to have been suffered by the plaintiff. I concur in the discussion on that point in the opinion filed. Second, the plaintiff stood by and without protest permitted the removal from the leased premises of the rock, shale and soil for which he now claims compensation. In the circumstances of this case, as they are set out in the opinion, it was his duty to protest. Had he done so, the lessee might have procured material necessary for the fill near the tipple from other sources. Considering the amount paid for mining privileges, and other circumstances of the case, the lessee had the right to assume that the terms of the lease under which he was working would be liberally construed in his favor and it was, in my opinion, peculiarly a case where the lessor was called upon to protest. Not having done so, I think he is now estopped from prosecuting the claim here presented.