The **OTTO GERDAU CO.,** Appellant,

v.

**LAMBERT'S POINT DOCKS, INC.,** Appellee.

No. 83–1855.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1984.

Decided May 3, 1984.

Richard I. Gulick, Glen W. Thompson, Norfolk, Va. (Gulick & Maynard, Norfolk, Va., on brief), for appellant.

James C. Howell, Norfolk, Va. (Joseph A. Leafe, John C. McLemore, Willcox, Savage, Dickson, Hollis & Eley, P.C., Norfolk, Va., on brief), for appellee.

Before WINTER, Chief Judge, HALL, Circuit Judge, and BUTZNER, Senior Circuit Judge.

K.K. HALL, Circuit Judge:

The Otto Gerdau Company (Otto Gerdau) brought this diversity action against Lambert's Point Docks, Inc. (Lambert's Point) to recover for losses it incurred when cocoa beans, which it had purchased and which were stored in defendant's warehouse, became infested by cocoa moths. Following a bench trial, the district court held that plaintiff had failed to sustain its burden of proving defendant's negligence and entered judgment in favor of Lambert's Point. From this judgment, Otto Gerdau appeals. Because we conclude that the district court

erroneously allocated the burden of proof between the parties, we vacate the judgment below and remand the matter for further consideration.

## I.

On March 29, 1981, the EXPORT CHALLENGER sailed from Abidjan on the Ivory Coast with a load of cocoa beans, including those which are the subject of this litigation. The vessel arrived in Norfolk, Virginia, on April 11, 1981, and the cargo was completely discharged by April 15.

Three thousand eight hundred fifty bags of the cocoa beans were placed in defendant's Warehouse Q, and on May 6, 1981, Lambert's Point issued a warehouse receipt for these beans to their owner, Volkart Brothers. This receipt indicated that the bags of beans were received "in apparent good order, except as noted hereon (contents, condition and quality unknown)." No exception was noted concerning the condition of the outside of the bags.

On May 26, 1981, cocoa beans from the vessel PETER WESCH were discharged and were also stored in Warehouse Q in a bay adjacent to that containing the beans owned by Volkart Brothers. On May 29, 1981, Otto Gerdau purchased from Volkart Brothers 1,860 bags of the cocoa beans stored in Warehouse Q. The defendant's warehouse receipt memorializing this transaction is dated June 8, 1981. It also states that the bags of cocoa beans were received "in apparent good order, except as noted hereon (contents, condition and quality unknown)", and no exception was noted concerning the condition of the bags.

On June 1, 1981, Otto Gerdau issued orders to deliver 1,395 bags, or approximately 75%, of the beans to two chocolate manufacturers. These beans, which, on May 20, 1981, had been sampled to evaluate their quality, were accepted by their purchasers without complaint.

Lambert's Point conducted weekly inspections of the beans and once a month the beans were inspected by a representative of Western Termite and Control ("Western"). Otto Gerdau received reports of the inspections conducted at Lambert's Point. The first evidence of cocoa moth infestation in Warehouse Q was noted in Western's report of June 19, 1981. According to this report, there were light moth flyers throughout the warehouse.[1] Western's report dated July 29, 1981, noted a light larvae condition and medium moth flyers throughout the warehouse. In early August, 1981, Lambert's Point fogged Warehouse Q with an insecticide to prevent further infestation.. Inspection reports continued to indicate the presence of moths, larvae, and cocoons, and Lambert's Point again fogged the warehouse on August 21, 1981, and September 7, 1981.

On October 19, 1981, plaintiff's remaining 465 bags of beans were released in "apparent good order and condition" to Wyatt Transfer Co., where they were fumigated and eventually delivered to General Foods in Canada. Because of the infestation, however, General Foods rejected most of the beans as substandard, even after they had been reconditioned.

Subsequently, Otto Gerdau brought this action against Lambert's Point, claiming that it had sustained a loss of $53,323.61 as a result of the damaged cocoa beans intended for General Foods. In its complaint, plaintiff alleged that 1,860 bags of cocoa beans had been delivered to defendant's warehouse in good order and condition and that defendant had issued a warehouse receipt for the beans. Plaintiff further alleged that defendant had "breached its duty as a warehouseman to properly care for the defendant's property and the breach of such duty was the cause of the damage to defendant's property."

Lambert's Point answered, denying that it had breached any duty owed to Otto Gerdau. The case was tried to the district

---

**1.** Flyers represent the final stage in the life cycle of the moths, which progress from egg to larvae to cocoon to flyers capable of reproduction.

court. At trial, plaintiff offered evidence attempting to demonstrate that its cocoa beans were in good condition on their arrival at defendant's warehouse and were subsequently infested, while stored in the warehouse, by the beans from the PETER WESCH.

Following the bench trial, the district court concluded that plaintiff's action sounded in tort and that plaintiff had failed to carry its burden of affirmatively proving negligence on the part of Lambert's Point, the bailee. In so holding, the trial court rejected Otto Gerdau's contention that it had established a prima facie case of receipt in good condition and subsequent delivery in an infested condition, after which the burden shifted to the defendant bailee to prove that infestation occurred before the beans were delivered.

According to the district court, the burden-shifting rule which plaintiff advocates applies only in actions brought on a contract. Because it found that Otto Gerdau's action sounded only in tort, the trial court held that the traditional burdens of proving negligence applied. It concluded that plaintiff failed to meet its burden of proof that the infestation originated at Lambert's Point or that defendant was in any way negligent in causing or increasing the infestation or in failing to fog the warehouse earlier. As stated by the district court:

> The location of the plaintiff's beans when they first became infested by the cocoa moth is a pivotal factor in this case. If the bags of beans contained eggs of the cocoa moth when they left the Ivory Coast, and these eggs eventually grew and multiplied to cause the damaging infestation, then the defendant cannot be held responsible for such damage. On the other hand, if the bags were free of eggs when they arrived in Norfolk but were subsequently infested by moths from some other source, such as the bags from the PETER WESCH, then the defendant may be held liable for the resulting damage.

However, based on the evidence adduced at trial, we simply cannot determine which of these two scenarios took place. The evidence is equally susceptible of either of the two interpretations. This appeal followed.

II.

On appeal, Otto Gerdau contends that the trial court erred in concluding that its action was brought solely in tort. Appellant also asserts that the trial court erroneously failed to conclude that Otto Gerdau had established a prima facie case below. Finally, appellant contends that once its prima facie case is established, the burden shifts to Lambert's Point to prove that any damage was due solely to an inherent vice of the cocoa beans. According to appellant, the trial court erred in concluding that the burden-shifting rule was inapplicable in this case. After considering the contentions of the parties, we conclude that the trial court improperly allocated the burden of proof between the parties and that a remand is necessary. We reach this conclusion without regard to whether the underlying action sounded in tort or in contract.

In Virginia, the case of *John Nix & Co. v. Herbert*, 149 Va. 131, 140 S.E. 121 (1927), provides pertinent precedent for allocating the burden of proof between a bailor and a warehouseman. In *Nix*, plaintiff brought an action of trespass on the case in assumpsit for damages resulting from the loss of apples stored in defendant's warehouse. The Supreme Court of Virginia held that the burden is on the bailor to show delivery in good condition, after which the burden shifts to the warehouseman to prove that any damage caused after delivery was not his fault but was due solely to the inherent nature of the goods.

The *John Nix* rule was specifically recognized and preserved by the Virginia legislature when it adopted Title 7 of the Uniform Commercial Code, Va.Code § 8.7–101, *et seq.*, which now governs the conduct of warehousemen in the Commonwealth. Section 8.7–403(1)(b), which addresses the

obligation of a warehouseman to deliver goods, states in pertinent part that "[t]he bailee must deliver the goods to a person entitled under the document ... unless and to the extent that the bailee establishes ... damage to or delay, loss or destruction of the goods for which the bailee is not liable." As the Comments to this code section make clear:

> The adoption of subsection 8.7–403(1)(b) without the optional language [of the Uniform Commercial Code] leaves unchanged the Virginia rule as regards the burden of proof in fixing the liability of a warehouseman. *John Nix & Co. v. Herbert,* 149 Va. 131, 134–35, 140 S.E. 121 (1927), held that the bailor must prove by a preponderance of the evidence that he delivered the goods in good condition to the bailee and that they were returned in a damaged condition. Thereupon, the bailee must prove by a preponderance of the evidence that he exercised due care in order to be relieved from liability.

Thus, in Virginia, any action brought by a bailor against a bailee under the provisions of this code is subject to the burden-shifting rule established in *John Nix* and incorporated in Va.Code § 8.7–403(1)(b). Moreover, the statute's burden of proof provisions may not be altered by contract. Va. Code § 8.7–202(3).

 We, therefore, cannot agree with the district court's conclusion that the *John Nix* rule is inapplicable in this case because Otto Gerdau sued in tort and not in contract.[2] Whether the underlying action emphasizes the negligence aspects of the wrong alleged is irrelevant. As long as the action is subject to the provisions of Title 8.7 of Virginia's Uniform Commercial Code, we hold that the burden-shifting rule under Va.Code § 8.7–403(1)(b) applies. The instant case was brought by a bailor against a bailee for damages arising out of an alleged breach of the warehouseman's duty to deliver goods stored under a warehouse

receipt. We conclude that such an action is subject to the provisions of Virginia's Uniform Commercial Code, including the burden of proof requirements of Va.Code § 8.7–403(1)(b). We, therefore, remand this case to the district court for it to determine whether Otto Gerdau has established a prima facie case, and, if so, whether Lambert's Point has come forward with sufficient rebuttal evidence to demonstrate inherent vice. Only then may an ultimate decision on liability be made.

### III.

For the foregoing reasons, the judgment of the district court is vacated and the matter is remanded for further consideration consistent with this opinion.

VACATED AND REMANDED.

---

**2.** In drawing a distinction between tort and contract actions, the district court relied in part on the Virginia Supreme Court's decision in *Canty v. Wyatt Storage Corp.,* 208 Va. 161, 156 S.E.2d 582 (1967). We reject any suggestion that *Canty* renders the *John Nix* burden of proof scheme inapplicable to actions "sounding in tort," so long as they are controlled by Va.Code § 8.7–101, *et seq.*